(Decided June 24th, 1858.)

---

STATE, use of THE MAYOR & CITY COUNCIL OF BALTIMORE, *vs.* LAMBERT S. NORWOOD, ELIZABETH SMITH, J. M. TUNRER and J. W. WATKINS.

In a suit upon a bond with collateral conditions, brought in the name of the State, for the use of the equitable plaintiffs, the declaration did not assign breaches, and the parties *agreed* that "errors in pleading on both sides be waived, and that either party may give in evidence any testimony which might have been offered in any state of the pleadings." HELD:

That under this agreement breaches need not be suggested in the pleadings, or upon the roll, and the bond sued on must be admitted in evidence, even though the counsel for the equitable plaintiffs, when asked, refused to state what breach of the bond he intended to rely upon.

The act of 1856, ch. 352, repealing the stamp laws, removes all objection to a bond for want of a stamp, and authorizes the appellate court to reverse the decision of an inferior court, refusing to admit the bond in evidence because not stamped, though the repealing act was not passed until *after* such decision was made.

The stamp laws did not design or profess to confer upon the citizens of the State any private benefits or rights, but operated to impose burdens upon them for State purposes, which the Legislature had full authority to remove at any time, by a repealing act.

As a general rule, where the interpretation of a statute is doubtful, in respect to pre-existing contracts, it will be construed as operating prospectively, but when the language of a statute clearly indicates an intention that it shall have a retroactive effect, it must be so applied.

State, uso of Mayor & C. C. of Balto., *vs.* Norwood, *et al.*

APPEAL from the Superior Court of Baltimore city.

This action was brought on the 5th of May 1854, in the name of the State, for the use of the Mayor and City Council of Baltimore, against Lambert S. Norwood and his sureties, upon the official bond of Norwood, as clerk of the Court of Common Pleas, dated the 29th of June 1853. This bond was not *stamped*, and was given to the State in the penalty of $50,000, and conditioned in the same manner as the bond in the preceding case.

The *declaration* and *plea* were the same as those in the preceding case, and the agreement in regard to waiving errors in pleading, and admitting testimony, is set out in the opinion of this court.

In the course of the trial an exception was taken by the ruling of the court below, (FRICK, J.,) which is fully stated in the opinion of this court, and the verdict and judgment being in favor of the defendants, the plaintiffs appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*B. C. Presstman* and *G. L. Dulany* for the appellants:

The appellants insist that the *agreement* made by counsel before the trial, is sufficient, in itself, to meet the objections to the admissibility of the bond in evidence, on which this suit was instituted. Although the appellees appear unwilling that the *"reasoning"* of the court below should be considered as within the range of the exception, but simply the *"conclusion"* at which the court arrive, we have not been able to discover, in the appellees' argument, any other reasons for the ruling of the court, than those given by the judge who presided at the trial. The fact, then, that the bond was *unstamped*, and that the pleadings were defective, no breaches having been assigned, are the only objections the appellants are required to meet.

The true effect of a somewhat similar agreement, has been settled by this court in the case of *Laurenson vs. The State,* 7 *H. & J.,* 339, where the court say that the want of breaches assigned in an action on a bond with a collateral condition,

would be fatal, but for the *waiver* made by such an agreement. The agreement in that case was somewhat ambiguous, and it was insisted by counsel that it was confined to the benefit of the defendant. In our case, it was for the mutual benefit of plaintiffs and defendants. Another view of this objection is, that the docket of the court below disclosed the fact that no party other than the State as legal plaintiff, and the Mayor and City Council of Baltimore as the equitable plaintiffs, were interested in this suit. The suggestion, therefore, that it was possible that the suit was on a bond originally made for the benefit of the State alone, but entered, by reason of some independent transaction, for the use of another party, is not entitled to weigh any thing in the discussion of the question.

The next question is, was this such a bond as needed a stamp for the purpose of this suit, viz: the recovery of money alleged to be due by the defendants to the Mayor and City Council of Baltimore, it being admitted that it did not require a stamp to make it obligatory for the recovery of any claim due under it to the State? We insist that wherever a bond is required to be given by a public officer to whom is entrusted the collection of the revenue of the State as well as that of a body politic, such as the municipal corporation of Baltimore, and where, by the provisions of the law under which he is elected, as in this case, his duties are prescribed, and the custody of the bond to be given by him is placed in the State's officer, and where the approval of his bond, likewise, as in this case, is also confided to another officer of the State, it would be unauthorized for any other form of bond to be demanded of him by any party interested in the money which he, by virtue or color of his office, might receive. It is plain, therefore, that if the doctrine contended for by the appellees be correct, a State officer of this description might become a legalized plunderer, guarded, indeed, by the panoply which the State has thrown around him. Can the same bond be good for the purposes of the State, and utterly worthless for the protection of others, whose interest she alone is competent to guard? There must be vice lurking somewhere in any argument sustaining such a legal proposition. Since the very

able and sound theory of the relations sustained by political bodies corporate to the State sovereignty, pronounced by Chief Justice Taney, in the case of *The State of Maryland vs. The Baltimore & Ohio Rail Road Co.*, 3 How., 549, 550, there can hardly be a doubt that these corporations are but agents of the State, and, as such, are to be regarded as but her ministers and stewards, under whatever name they may act. This bond is virtually one given to the State, although covering revenue due to the corporation of Baltimore. The correctness of this reasoning is never more apparent than in considering the issues involved in this controversy, where a distinction is sought to be made, by which a public officer of the State may be entrusted with power to collect large sums of money due to a portion of the citizens of the State, whose ability to pay State taxation may depend upon the security of liabilities to them, entered into by State officers, and be allowed to escape responsibility in the delicate—the most delicate—trust of collecting revenue. We rest with confidence on the grounds stated in the case of *Laurenson vs. The State,* already cited, as maintaining this salutary doctrine, which is based so firmly in morals, as well as in law, that no public officer shall be allowed to take advantage of his own wrong, and shield himself, after obtaining public moneys, with the unprincipled assumption that he had acted beyond the bounds of his authority, or had not complied with obligations resting upon him as a condition of office. But supposing this view is untenable, we still rely upon the reasoning of the court in *State vs. Milburn,* 9 *Gill,* 116, 118, where, in considering the effect of requiring bonds given to the State to be stamped, the failure to provide, under the act of 1844, ch. 280, sec. 8, for curing the defect of the want of stamps in bonds given *to the State,* is pointed out. If this view be entitled to weight by parity of reasoning, it should avail where, as in this case, by the entire absence of any provision of law to enable any officer of the corporation of Baltimore to remedy this defect, so as to exempt the city from loss. Indeed, if it be true that for this reason the exemption is made in behalf of the State, *a fortiori,* it should be made in behalf of the city.

Lastly, we insist that the defect for want of a stamp, if it

be one, is no longer available to the appellees, since the passage of the act of 1856, ch. 352, secs. 4, 5, which repeal the stamp laws, and *make valid* all obligations which may have been executed without stamps, and that the appellants are entitled to a reversal of the ruling of the court in this case, notwithstanding the court may have been right at the time of passing upon its admissibility in the trial below. 1 *Cranch*, 110, *United States vs. Schooner Peggy*. Neither does this case fall within the category of cases where private rights may be interfered with by unjust legislation. On the contrary, the appellants insist that in this case the legislation was based upon sound policy, the effect of which is not to produce injustice, but rather to subserve the ends of equity and good conscience, by repealing provisions of laws designed for a different purpose than that sought to be accomplished by the appellees in this case.

*John Stewart, C. J. M. Gwinn* and *Chas. H. Pitts* for the appellees:

The appellees say that the court below was, under the circumstances disclosed by the record, right in refusing to allow the bond to be read in evidence. Let us examine the case as it stood before the court. The plaintiff had declared that the defendants were indebted to the State, for the use of the Mayor and City Council of Baltimore, on a certain bond in the sum of $50,000. Now it is plain that from such a bond several inferences might be drawn. It was possible the suit was on a bond originally made for the benefit of the State alone, but entered, *by reason of some independent transaction*, to the use of another party. It was also possible the suit was for the benefit of the party for whose use it was entered, by reason of some actual, original and subsisting interest in the conditions of the bond. The court will see that the cases which the defendants would be required to meet, would radically differ, according as the one or other of these hypotheses might prove to be true. If the pleadings had been regular, the declaration, or, in conformity with the practice in this State, the replication, ( *Scott vs. State, use of Ducker*, 2 *Md. Rep.*, 290,) would neces-

sarily have shown the breaches on which the plaintiff in interest proposed to rely, and the *defendants would then have known what they had to answer.* But the pleadings were not regular, and the defendants could not tell from the declaration filed, because of the divers claims such a declaration might cover, whether breaches *quoad* the State, or *quoad* the city, were intended to be relied on in the offer of the bond in evidence. Therefore, though errors in pleading were waived, yet as the *agreement* was that the plaintiff might give that in evidence which he could have given in *"any state of pleadings,"* and as by this must have been meant any *correct* state of pleadings, it was incumbent on the plaintiff, when he offered the bond, to show *orally* to the court the state of pleadings *which might have existed,* and which would, *if it had existed,* have justified the introduction of the testimony. And, in showing such state of the pleadings, the equitable plaintiff must have shown the breaches on which he relied; for, even if the equitable plaintiff had been able to trace argumentatively, by construction of statute laws, an interest in the bond, that interest was of no moment in the particular suit, unless a breach could be shown affecting him, the city being regarded as the real plaintiff, though the State, technically speaking, is so. *Ing, et al., vs. State, use of Lewis, et al.,* 8 *Md. Rep.,* 295. For how, without such setting forth of the breaches, *in some way,* would the jury be able to assess the damages? It was not necessary, under the agreement, that the breaches should have been shown in the *pleadings,* but it was necessary they should have been supported on the *roll,* in order that the case should proceed at all. *Clammer vs. State, use of Beall,* 9 *Gill,* 281. In the absence of an averment of a breach in which this equitable plaintiff was interested, there was on the face of the paper offered *no sign even that it was relevant testimony.* And though the rule is, that the court, "not seeing clearly" that such evidence "is wholly foreign and irrelevant to the issue, and cannot be connected with it by other facts and circumstances," may "admit the proof on the assurance of counsel that it will turn out pertinent and material," *(Haney vs. Marshall,* 9 *Md. Rep.,* 213,) yet there is no such rule where

"no such assurance was given," ( *Marshall vs. Haney*, 4 *Md. Rep.*, 510,) and still less where, as in this case, the plaintiffs' counsel refused to give the assurance or any information as to his meaning or purpose in offering the evidence. It seems, therefore, in our view, there is no question but that the court was right, under the circumstances, in refusing to admit the bond to be read in evidence. Nor is it believed the appellants' case is made better by the appearance in the record of what was *said* by the court when the bond was rejected. These expressions of the court are not *rulings* in the sense in which they seem to be taken by the appellants. The only *ruling* of the court was the refusal to admit the bond in evidence; all else that was declared by the court, and which stands in the record, was but the *reason* given by the court *for its ruling.* The sufficiency or insufficiency of the method by which the court arrived at a conclusion, is not a proper subject of exception; the conclusion it came to is the sole ground to be reviewed. We do not mean to be understood as saying there are not cases in which reasoning and illustration, taking the form of propositions, may not be made the subject of exception, when uttered by a court at the trial of a cause. The case of *Sowerwein vs. Jones*, 7 *G. & J.*, 339, perhaps, proves the contrary. But such reasoning and illustration, to be the subject of an exception, must be in such shape as that if it is wrong, *the jury will be misled by it*. This is the ground of the decision in the case referred to. But where there is no jury, and where the *reasoning* of the court in its rulings does not affect the jury, because that *ruling* takes the case from the jury, and, therefore, cannot influence them, such reasoning, if it be wrong even, cannot be made the subject of an exception. This direct and single point ruled, without regard to the reasons why it was so ruled, is the only question open for review in the Court of Appeals.

We cannot believe this court will take a different view of this question, but if they do, we then insist that what was said by the court below was *law*. The court simply decided that the bond offered in evidence was not admissible to prove any breach in which the *city* was interested, *because it was not*

*stamped.* That the court was, on the 12th of December 1854, right in this proposition of law, is plain from the case of *The State vs. Milburn*, 9 *Gill*, 116. So stood the law when the record in this case was made up, which record, in the very form in which it then was, is now before this court. So that we think, *on the record,* we are entitled to an affirmance. But the Legislature, by the act of 1856, ch. 352, sec. 4, (passed on the 10th of March 1856,) repealed the stamp laws of 1844, ch. 280, and 1845, ch. 193, and it is contended by the appellants that they can avail themselves of this repeal at the hearing before this court, and, by reason thereof, are entitled to a reversal of the judgment in this case. To this proposition we oppose an absolute denial, and say that this court cannot so far take judicial notice of the repealing act as to reverse this judgment because of *any* provisions contained therein. The Court of Appeals, as it existed under the old constitution, was prohibited from reversing any judgment on any point or question which did not appear to have been presented to the county court, and on which that court had not rendered judgment. Act of 1825, ch. 117. The constitution of 1851, in art. 4, sec. 2, comes in aid of this limitation of the jurisdiction of this court, by declaring that the Court of Appeals *shall have appellate jurisdiction only*. The law and the constitution together say that this court, having *only* appellate jurisdiction, shall not consider any point or question which was not raised in the court below. Is there any exception to this absolute proposition? None whatever. Whether it would have been wise to provide for the recognition of an alteration either in the relation of the parties, in the history of facts, or in the state of the law, occurring *after judgment* and *after appeal taken,* but *before appeal heard,* is immaterial. No such provision has been made. The Court of Appeals takes jurisdiction of the case, on appeal, as the parties left it at the trial below. They may have failed to present the points which ought to have been presented, and which are obvious on examination of the record. The Court of Appeals cannot remedy their neglect, if the court below was right on the record as it stands. The parties may have entirely overlooked, at the trial below, an

act of Assembly then existing, and have failed to ask any instruction of the court as to its application to existing facts. Yet though the law on which they might have asked the instruction be within the judicial knowledge of the Court of Appeals, and though, if applied, the judgment would be righteously altered, in the absence of a prayer justifying an application of the law of which the consideration was omitted, the Court of Appeals can no more notice it than if such a law was not on the statute book. If they cannot take judicial notice of a law in existence when the trial below was had, because no question of its application or construction has been raised, whence is derived the right to take judicial notice of a law which, by reason of the date of its passage, was not, and could not have been, made the subject of their limited appellate jurisdiction? The appellants answer, they derive this right from the 5th section of the act of 1856, ch. 352. That section says: "'That all bonds that have been drawn previous to the repeal of this act, and have not been stamped, shall be as good and valid as though they had been stamped, and all those debts that have been created, where proper vouchers are shown, shall be as valid in law as though the stamp act had never been passed.'" Will the Court of Appeals say that this law not only makes such bonds valid, but authorizes them to say that the decision of the court below ought to be reversed, because it rejected testimony which, by the law as it then stood, was certainly inadmissible? We may admit, for the argument's sake, in the broadest sense, that this bond was, after March 10th, 1856, valid without a stamp, and that it was, after that date, sufficient to protect all who had an interest in its execution; but the fact that it had become a valid bond, and one capable of being offered in evidence in behalf of any party interested in it, after the appeal taken, does not make a court in error which, in conformity with the law as it stood when the decision was given, decided the bond to be *then* invalid as evidence. There is no rule of necessity or hardship, it is thought, which can authorize the court to come to any other conclusion than that here insisted on, and the appellees, therefore, think the judgment in this case ought to be affirmed.

ECCLESTON, J., delivered the opinion of this court.

This suit was instituted in the name of the State for the use of the Mayor and City Council of Baltimore, against Lambert S. Norwood, Elizabeth Smith, Joshua M. Turner, and John W. Watkins, upon the official bond of Norwood, as clerk of the Court of Common Pleas for the city of Baltimore, dated the 29th of June 1853; the penalty of which is fifty thousand dollars. The *nar* and the plea are similar to those in the preceding case, between the State for the use of the Mayor and City Council of Baltimore, as plaintiffs below, against L. S. Norwood, E. Smith, and J. M. Turner.

In the case now before us, the record contains an agreement in the following language:

"It is agreed that in this case errors in pleading on both sides be waived, and that either party may give in evidence any testimony which might have been offered in any state of the pleadings. The copy of the bond may be given in evidence without producing the original."

It appears from the record a jury was sworn, and their verdict, as stated, is, "that the defendants do not owe to the said plaintiff the said sum of money, or any part thereof, in manner and form as the said plaintiff hath above alleged." And thereupon the court, on the 12th of December 1854, gave judgment in favor of the defendants; from which this appeal is taken by the plaintiff.

The bill of exceptions shows that, upon the bond being offered in evidence at the trial, the defendants' counsel asked the counsel for the plaintiffs "for what purpose the same was offered, and what breach of said bond it was intended to rely upon in this case, and, on the plaintiffs' counsel refusing to answer that question, or declare on what breach he intended to proceed under said bond, the court sustained the objection of the defendants' counsel as to its being offered in evidence; and the same was ruled out, because the bond, on its face, covering all the duties and liabilities of the defendant, Norwood, as clerk of the Court of Common Pleas, unless it is offered with the intent to prove, under the breaches of it, some default in which the State is directly concerned and interested,

## JUNE TERM 1858.　　　205

State, use of Mayor & C. C. of Balto., vs. Norwood, et al.

which intention is repelled by its being sued on for the use of the Mayor and City Council of Baltimore, it is inadmissible in evidence under the act of 1844, ch. 280, and 1845, ch. 193, it further not appearing to the court, for want of breaches assigned in the pleadings, for what purpose the bond is offered in evidence." To this ruling of the court, and refusal to admit the bond to be read in evidence, the plaintiffs excepted.

In *Laurenson vs. The State, &c.,* 7 *H. & J.,* 339, in a suit upon a bond with a collateral condition, no breaches were assigned, but there was an agreement similar, in most respects, to the one in the present case. The court considered that a waiver of errors in pleading, and as dispensing with an assignment of breaches in the regular mode. In delivering the opinion of the court, and whilst speaking of such a practice, the late Judge Martin called it "a very loose course of proceeding," and we think he gave it an appropriate name. The authority of that case, however, requires us to hold in this, that under the agreement there was no need of suggesting breaches in the pleadings, or upon the roll. And we must also say, that the refusal of the counsel for the equitable plaintiffs to state what breach of the bond he intended to rely upon, when he was asked to do so, could not justify the court in refusing to admit that instrument to be read in evidence. If it had been admitted, it would still have been necessary for the equitable plaintiffs to show, by proof, that they had some valid claim for which the bond was responsible.

A further objection to the admissibility of the bond, mentioned by the court and insisted upon by the defendants' counsel, is, that it was not stamped, as required by the laws existing at its date. The acts alluded to, were passed for the purpose of raising revenue for the State. They did not design or profess to confer upon the citizens of the State, or others, any private benefits or rights, but operated to impose burdens upon them for State purposes. The Legislature, therefore, had full authority to remove such burdens at any time, by repealing those laws, and this was done by the act of 1856, ch. 352, secs. 4 and 5. The latter of these sections provides, "That all bills, notes or bonds that have been drawn previous to the

repeal of this act, and have not been stamped, shall be as good and valid as though they had been stamped, and all debts that have been created, where the proper vouchers are shown, shall be as valid in law as though the stamp act had never been passed."

But for the decision below, it cannot be doubted that this repealing law would remove all objection to the bond for want of a stamp. Although the law, in this view of it, would be retroactive in its operation, still that could not prevent its having such an effect. It is true, as a general rule, that when the interpretation of a statute is doubtful, in respect to pre-existing contracts, it will be construed as operating prospectively. But when the language of the statute clearly indicates an intention that it shall have a retroactive effect, it must be so applied. *Baugher, et al., vs. Nelson,* 9 *Gill,* 303. See, also, *Reynolds vs. Furlong,* 10 *Md. Rep.,* 321.

After the decision in *Atwell vs. Grant,* 11 *Md. Rep.,* 104, with reference to the act of 1856, we must reverse the decision in this case, so far as regards the refusal of the court to admit the bond in evidence because it was not stamped. And such a reversal we consider proper, although the stamp laws were not repealed until subsequently to the decision below.

In the case of *United States vs. Schooner Peggy,* 1 *Cranch,* 110, Ch. J. Marshall says: "It is, in the general, true that the province of an appellate court is only to enquire whether a judgment, when rendered, was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes, and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional, and of that no doubt in the present case has been expressed, I know of no court which can contest its obligation. It is true that in mere private cases between individuals, a court will, and ought to, struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns, where individual rights, acquired by war, are sacrificed for national purposes, the contract making the sacrifice ought always to receive a construction conforming to its manifest im-

port; and if the nation has given up the vested rights of its citizens, it is not for the court, but for the government, to consider whether it be a case proper for compensation. In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside.''

The principle thus announced requires a reversal of the decision upon the question now under consideration. The act of 1856, in this connection, is merely an abandonment or surrender of the rights of the State. It does not impose upon the parties any obligations which the terms of the contract were not, in good faith, designed to create, and to insure the performance of. The law only permits the contract executed by the defendants to be used in evidence, which use had been prohibited for the purpose of securing the payment of a tax to the State, the failure to pay which has been released by the State, and the law releasing the tax declares that the contract shall be as valid in law as if the act creating the tax had never been passed.

In the previous case of the present term, to which reference has been made, it has been said there was no necessity to obtain authority from the State to institute that suit, and, of course, the same law will apply to this.

*Judgment reversed and procedendo ordered.*

(Decided June 24th, 1858.)