CHARLES P. MONTAGUE, Executor of ELIZA C. MON-
TAGUE *vs.* THE STATE OF MARYLAND.

*The law as it exists at the time of Final judgment, and not as
it existed at the time of the Appeal, must control—Collateral
inheritance tax—Act of 1874, ch. 483, sub-sec. 113 of sec. 3—
Validity of the Act of 1880, ch. 444; a General and
not a Special law under sec. 33 of Art. 3 of the Constitu-
tion—Right of action against a Collateral distributee for
Legatee to recover the Collateral inheritance tax, not retained
by the Administrator or executor.*

It is the duty of this Court to decide, and dispose of any case
before it, according to the law as it exists at the time of final
judgment, and not as it existed at the time of the appeal.

By the will of E. C. M., admitted to probate in October, 1877, C. P.
M., her husband, was made executor and residuary legatee. As
executor he collected and received into his possession moneys of
the decedent to such an amount, that after paying therefrom funeral
expenses, debts, legacies and cost of administration, there remained
in his hands on the 22nd of September, 1879, when his first
account as such executor, was passed by the Orphans' Court, a
balance in cash of $68,713.63. This balance he was allowed by
the Court to account for and retain as residuary legatee. Suit was
brought against C. P. M. in his individual capacity, though
described as executor, to recover the sum of $1717.84, claimed by
the State as a collateral inheritance tax of two and one-half per
cent. upon such residuary legacy from the testatrix to her husband.
A *pro forma* judgment was entered for the State for this amount
on the 19th of January, 1880, and the defendant appealed. On the
14th of April, 1880, pending the appeal, and before it came on for
hearing, the Governor approved the Act of 1880, ch. 444. Sub-sec-
tion 113 of the third section of the Act of 1874, ch. 483, contained
a clause exempting from the operation of the collateral inheritance
tax all estates, real and personal, which passed " to, or for the use of
the father, mother, wife, children and lineal descendants of the
grantor, bargainor, devisor, donor or intestate." This sub-section
was repealed and re-enacted by the first section of the Act of 1880,

ch. 444, so as to include "husbands," and by this repeal and re-enactment, the exemption was extended to all estates, real and personal, which pass " to, or for the use of the father, mother, *husband,* wife, children, and lineal descendants of the grantor, bargainor, devisor, donor or intestate." The second section of the Act of 1880, ch. 444, provides that "this Act shall take effect from and immediately after its passage, *and shall apply to all cases of collateral inheritance tax heretofore claimed of, but not actually paid by, the husband of any decedent.*" HELD:

1st. That the last clause of the second section of the Act of 1880, ch. 444, was valid, and covered the case of the appellant, and the judgment against him was, therefore, improper.

2nd. That the Act of 1880, ch. 444, was a public general law of the State, and not a special law within the contemplation of section 33 of Article 3 of the Constitution.

If an administrator or executor actually pays over money of his decedent to a collateral distributee or legatee, without retaining therefrom the collateral inheritance tax, it becomes to the extent of the tax, money had and received by him for the use of the State, and an action of *assumpsit* may be maintained against such distributee or legatee therefor.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and IRVING, J.

*Charles E. Phelps,* for the appellant.

*Charles J. M. Gwinn, Attorney-General,* for the appellee.

MILLER, J., delivered the opinion of the Court.

In this case suit was brought by the State on the 3rd of December, 1879, against Charles P. Montague, executor of Eliza C. Montague. The declaration contained the common counts, and the general issue was pleaded. All

errors in pleading were waived, and the case was tried on an agreed statement of facts. By this it was agreed that by the will of Mrs. Montague admitted to probate in October, 1877, the defendant, her husband, was made executor and residuary legatee; that by his first account as executor which was passed by the Orphans' Court on the 22nd of September, 1879, it appears he had collected and received into his possession as executor, moneys of the decedent to such an amount that after paying therefrom funeral expenses, debts, legacies and cost of administration, there remained in his hands on that day a balance of $68,713.63 in cash, which balance he was allowed by the Court to account for and retain as residuary legatee, and he has so accordingly retained the same; that this suit is brought against the defendant in his individual capacity, though described as executor, to recover the sum of $1717.84 claimed by the State as a collateral inheritance tax of two and one-half per cent. upon the above residuary legacy from the testatrix to her husband; that a *pro forma* judgment for this sum shall be entered for the State in order to bring the case to the April Term of the Court of Appeals; that all errors in pleading be waived, and the Court allowed to draw such inferences of fact as a jury might from the above statement. The *pro forma* judgment was accordingly entered on the 19th of January, 1880, and the defendant appealed. On the 14th of April, 1880, pending the appeal and before it came on for hearing, the Governor approved the Act of 1880, ch. 444, which materially affects the decision of the case, for it is well settled that this Court must decide and dispose of the case according to the law as it exists at the time of final judgment, and not as it existed at the time of the appeal. *United States vs. Schooner Peggy*, 1 *Cranch*, 104; *State vs. Norwood*, 12 *Md.*, 195; *Keller vs. The State*, 12 *Md.*, 322; *Smith vs. The State*, 45 *Md.*, 49.

Sub-section 113 of the third section of the Act of 1874, ch. 483, which imposes the collateral inheritance tax

contained a clause exempting from the operation of the tax, all estates real and personal which pass "to, or for the use of the father, mother, wife, children and lineal descendants of the grantor, bargainor, devisor, donor or intestate." In this exemption "husbands" are not mentioned, but the first section of the Act of 1880 repeals, and re-enacts this sub-section 113 so as to include them, and by this repeal and re-enactment the exemption is extended to all estates real and personal which pass "to, or for the use of the father, mother, *husband,* wife, children, and lineal descendants of the grantor, bargainor, devisor donor, or intestate." This is the only change the first section of the new Act makes in the original sub-section. The second section of the new statute provides "that this Act shall take effect immediately after its passage, *and shall apply to all cases of collateral inheritance tax heretofore claimed of, but not actually paid by, the husband of any decedent."* It is plain therefore that the decision of the present case depends upon the validity and construction of the *last clause* of this second section.

1st. As to its construction. Upon this the Attorney-General has made a very able and ingenious argument. Treating the clause as creating an exemption from taxation, he contends that the rule of strict construction universally applied in such cases must be adopted; that so construed, its application must be *confined* to cases where the tax upon *real* estate that has passed to the *husband* from the wife, has been claimed of the former. The reasoning upon which this conclusion is based is substantially as follows: That by sub-sections 113, 114, 115 and 116, of the original Act of 1874, the *executor* or *administrator* is bound to pay to the State this tax on the *personal* estate subject to it, before handing over any part of such personal property to the person to whom it passes from the decedent, and it is made his duty to make such payment within thirteen months from the date of his letters

under penalty of forfeiture of his commissions; that this obligation, though arising from his relation as executor or administrator of the estate, becomes when it attaches, *his* personal debt to the State, which he can discharge only by payment; but in regard to *real* estate the case is different, for by sub-sections 124 and 125, the tax is made a *lien* on the real estate passing to the collateral heir or devisee from the date of the death of the decedent, and the duty only is imposed on the executor or administrator of collecting the tax from such devisee or collateral heir; and the latter is the person whom the law regards as the actual debtor, the "person liable to pay said tax." From these premises it is argued that the State never had the right to make claim upon the appellant as the *husband* of the decedent for any collateral inheritance tax on *personal* property passing to him from her; that the State had a right to make *such* claim only upon him as her *executor*, and this claim became his certain and fixed debt thirteen months after the date of his letters; that the law assumes that he retained as executor the tax which he was bound to pay, and denies to the Orphans' Court the power to enable him to treat it as part of the money passing to him as residuary legatee; that the tax upon real estate passing to the husband of a decedent is a charge upon such husband, but the tax upon personal estate so passing never was a charge upon the husband, but upon the executor or administrator having custody of that part of the *corpus* of the estate; that the clause in question does not profess to release an *executor* from his statutory liability for the payment of this tax upon *personal* property which may have passed to the husband of a decedent of whose estate he may be executor or administrator, and if therefore the clause would not have released a stranger from the payment of this tax on the *personal* estate of the decedent, if such stranger had been her executor or administrator, it

cannot be interpreted as releasing the appellant who is such executor because he was also the husband of the decedent; hence the Court must confine the operation of the clause to cases of taxes upon real estate to which in strictness it is alone applicable.

But in answer to this argument it must be observed, in the first place, that the rule of strict interpretation referred to never has been, and never can be, carried to such an extent as to justify or authorize the Courts to disregard and set aside the intent of the Legislature manifested by the clear and unambiguous terms of a statute. In the next place this is not, strictly speaking, a clause exempting property from taxation, but a release, or abandonment of all claims for certain taxes that have already accrued, and have been demanded from but not paid by the tax-payer. The Legislature has seen fit, by this Act, to declare that hereafter the collateral inheritance tax shall not be imposed where property may pass by will or otherwise from a deceased wife to her surviving husband, and that, in *all cases* where such a tax has been " heretofore *claimed of*, but not actually paid by, the husband of any decedent," such claims shall be released or abandoned. That this was the purpose and intent of the law-makers we have no doubt. It is expressed in language too clear and explicit to need the aid of any rule or canon of interpretation to arrive at it. It seems to us equally clear, also, that the appellant's case is covered by it. This tax in respect to the personal estate of his wife, which he derived under her will, the State claimed by a suit, instituted, before this law was passed, against him not as *executor*, but, as the agreed statement of facts admits, "*in his individual capacity*," and against him in that capacity the judgment which is now before us for review was rendered. The State made the claim against him in that capacity, and afterwards, by the passage of this law, released it as well as all other similar demands. The

case then being within the plain terms of the Act, it becomes unnecessary to decide the question whether the claim was rightfully made by the State or not. But we do not agree that the only reliance the State has for the collection of this tax when it is imposed in respect to personal property, is upon the faithful discharge of the executor or administrator of the duties imposed upon him by the Act of 1874, sanctioned only by the penalty there prescribed of forfeiture of his commissions in case of neglect or refusal. In our opinion, if an administrator or executor actually pays over money of his decedent to a collateral distributee or legatee without retaining therefrom this tax, it becomes, to the extent of the tax, money had and received by him for the use of the State, and an action like the present may be maintained against such distributee or legatee therefor. This position is, we think, fully sustained by the principles laid down in the cases of *Mayor, &c. of Bnltimore vs. Howard,* 6 *H. & J.,* 383, and *Dashiel vs. Mayor, &c. of Baltimore,* 45 *Md.,* 615.

2nd. But several objections have been urged to the validity of this clause. The first that its subject is not sufficiently described in the title to the Act was not pressed in argument, and is fully met by our recent decisions in *Commissioners of Dorchester County vs. Meekins,* 50 *Md.,* 28, and *Commissioners of Talbot County vs. Commissioners of Queen Anne's County,* 50 *Md.,* 245. The second objection is in effect that this clause attempts to do retrospectively and indirectly what could not have been done prospectively and directly. It is argued that the Legislature could not constitutionally have provided by the original Act of 1874, that the parties who did not pay this tax within thirteen months should be exempted from such payment, and it could not therefore accomplish the same result by a retrospective clause in the Act of 1880. This argument seems to us to amount to this, that any tax law which should declare *exempted* all those who should *refuse*

*to pay,* would be to the extent of such exemption void, and that any repeal of a tax law accompanied by a release of all who had not actually paid at the time of the repeal, amounts to the same thing, and violates the rule of equal taxation prescribed by the 15th Article of the Declaration of Rights. But this argument has, we think, been well answered by the appellant's counsel in his supplemental brief thus: "If the Legislature is satisfied that a given tax is no longer necessary, that it is unjust, that a change of circumstances requires its repeal, that public policy demands that the repeal should be prompt, should give instant relief, and should therefore extend to all who had not yet actually paid, the Legislature has in its discretion the constitutional right so to enact, without being at the same time compelled to embarrass the treasury by a sweeping restitution to all who had paid the tax from the time of its imposition. Under some circumstances such a retrospective exemption might be highly expedient, and under others not. The question is one of policy for the Legislature and not one of law for the Courts." This answer to the objection meets our approval. We find nothing in the Declaration of Rights or in the Constitution to prevent the Legislature from attaching such a releasing clause to an Act repealing a tax law. The clause in question simply operates in this way, and we cannot hold it void on this ground. The question has never before been directly presented or decided, but an analogous case is found in the Act of 1856, ch. 352, which repealed the stamp laws. One section of that Act made valid all instruments drawn previous to the repeal to which no stamps were affixed. This operated a release of the obligation to pay the stamp tax to all who had not paid it at the time of the repeal, and the validity of that section in its operation upon unstamped instruments antecedently executed, has been repeatedly recognized by this Court. *Reynolds vs. Fur-*

*long,* 10 *Md.,* 318; *Atwell vs. Grant,* 11 *Md.,* 101; *State vs. Norwood,* 12 *Md.,* 195.

The next and last objection is, that the tax claimed of the appellant had become a specific ascertained debt due by him to the State on the 19th of January, 1880, when the judgment below was rendered, and the clause releasing it is inoperative and void under sec. 33, Art. 3 of the Constitution, because it neither appears upon the face of the Act that the release had been recommended by the Governor or Officers of the Treasury Department, nor does the Act provide that such recommendation shall be obtained before the release shall take effect. This section of the Constitution provides that " The General Assembly shall not pass *local,* or *special laws,* in any of the following enumerated cases, viz., For extending ¦the time for the collection of taxes; granting divorces; changing the name of any person; providing for the sale of real estate belonging to minors, or other persons laboring under legal disabilities, by executors, administrators, guardians or trustees; giving effect to informal, or invalid deeds or wills; refunding money paid into the State Treasury, or releasing persons from their debts, or obligations to the State, unless recommended by the Governor, or Officers of the Treasury Department." It is plain, we think, that this does not interdict a public general law, "releasing persons from their debts or obligations to the State," but that the inhibition is expressly confined to "local or special laws." Now the clause in question is certainly not a " local law," nor is it in our judgment a " special law " within the meaning of this constitutional provision. The provision immediately following in the same section, that " the Genaral Assembly shall pass no special law for any case for which provision has been made by an existing general law," has been construed as intended to prevent special legislation in special cases, (*McGrath vs. The State,* 46 *Md.,* 631,) and we think it very clear from

Montague, Ex'r *vs.* State.

the enumeration made that the object of the preceding provisions was to prevent or restrict the passage of special, or what are more commonly called *private* Acts, for the relief of particular named parties, or providing for individual cases. In former times, as is well known and as the statute books disclose, Acts were frequently passed for the relief of named individuals, such as sureties upon official bonds, sheriffs, clerks, registers, collectors and other public officers, releasing them sometimes absolutely, and sometimes conditionally from their debts and obligations to the State. The particular provision now invoked was aimed against the abuses growing out of *such legislation,* and its object was to restrain the passage of *such Acts,* and to prevent the release of debts and obligations in particular cases, and in favor of particular individuals unless recommended by the Governor or the Treasury officials. But the clause in the Act of 1880, we are now considering, is not a law of that character. It is not " An Act for the relief of Charles P. Montague." It does not appear to have been passed for his especial benefit, and it no more applies to him than it does to all other citizens of the State *in consimili casu.* It may be that the exigencies of this case had something to do with the insertion of this clause in the second section of this Act, but that is a matter which the Courts are not empowered to investigate. We must deal with laws as they appear upon their face, and as we find them upon the statute books. As it so stands this, in our opinion, is a public general law, and not a special law within the contemplation of this 33rd section of the Constitution.

Holding then, as we do, that this clause of the Act of 1880, ch. 444, is valid, and that it applies to this case, it follows that the judgment appealed from must be reversed.

*Judgment reversed.*