## D. K. ESTE FISHER, Surviving Trustee, *vs.* THE STATE OF MARYLAND.

*Collateral Inheritance Tax—Valuation of Estate after Termination of a Life Interest.*

The will of a resident of Baltimore City, probated in 1884, gave certain property to trustees in this State, to hold in trust for the testator's wife, during her life, and upon her death, for such persons as she might ap-

point by last will.   The property was transferred to the trustees by the executors.   The widow died in 1903 leaving a will by which the power of appointment was exercised and the estate given to a charitable corporation.   The value of the property held by the trustees had in the meantime more than doubled, since it was received by them.  Code, Art. 81, sec. 117, provides that all estates passing from any person who may die possessed thereof, being in this State, to any person or body politic other than for the use of the father, mother, husband, wife or descendants of the testator or grantor, shall be subject to a tax of two and a half per centum of the clear value of such estate.   *Held*, that the property held by the trustees is subject to the collateral inheritance tax at the time when it was to be transfer.ed to the collateral beneficiary.

*Held*, further, that this tax is imposed on the value of the estate not at the time of the death of the testator but upon its value at the time of the transfer to the donee under the will of the testator's widow, with interest from the date of the probate of her will.

*Decided May 1st, 1907.*

Appeal from the Superior Court of Baltimore City (NILES, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*Bernard Carter* for the appellant.

Upon whatever estate the collateral inheritance tax is imposed by the statute, (except the provisions contained in sections 130 and 131, which cannot be applied to the present case) it is imposed (1) as of the death of the testator or intestate; and (2) upon the value of the estate as then ascertained.

Every executor or administrator before he pays any legacy, or distributes the shares of any estate liable to the tax imposed by the *preceding section*, shall pay to the Register of Wills of the proper county or city 2½ per cent. on every hundred dollars he may hold for distribution among the distributees or legatees, for the use of the State (section 118).

When any personal property, other than money, is subject to the tax, it shall be paid on the appraised value thereof as filed in the office of the Register of Wills; and every executor shall have power, under the order of the Orphans'

Court, to sell, if necessary, so much of said property as will enable him to pay the tax (section 119).

Every executor or administrator must, within thirteen months from the date of his administration, pay the tax on the distributive shares and legacies in his hands ; on failure to do so he forfeits his commissions (section 120).

The Orphans' Court of the county in which administration is granted must appoint the same persons, who may have been appointed to value the personal estate, to appraise and value the real estate; and the duties of the appraisers shall be the same as the appraisers of the personal estate; the inventory of the real estate shall be separate and distinct from that of the personal estate (secs. 121, 122, 123 and 124).

When the appraisers have finished the inventory they return it to the executor or administrator, and he returns it under oath to the office of the Register of Wills to which the inventory of the personal estate is returnable, and within the same time and under like penalty; the appraisement thus made is to be taken as the true value of the real estate upon which the tax shall bo paid; and the tax is a lien on the real estate for a period of four years from the date of *the death of the decedent* who shall have died seized and possessed thereof. (Secs. 126, 127 and 128).

The executor or administrator must collect the tax from the parties liable to pay it within thirteen months from the date of his administration and pay the same to the Register of Wills of the county or city in which the administration is granted; upon failure of the parties, chargeable therewith, to pay the said tax within the time named, the Orphans' Court must order the executor or administrator to sell for cash so much of the real estate as may be necessary to pay the tax and the expense of sale, including the commissions of the executor or administrator thereon; after the report of the sale, the ratification thereof and the payment of the purchase money, the executor or administrator executes a valid deed for the estate sold; but the Orphans' Court shall not order any sale of real estate for the purpose above mentioned after the expiration of

four years from the date of the death of the decedent who shall have died seized and possessed of said real estate.

Therefore, inasmuch as whenever any species of *personal* property (other than money) is subject to the collateral inheritance tax, the tax is to be paid on the appraised value thereof as filed in the office of the Register of Wills (sections 119, 126, 127); and the inventory of the property is to be made upon the basis of this appraisement; the same appraisers who appraise the personal property must appraise and value the real estate for the purpose of this tax, the appraisement thus to be made being declared to be that which is to be taken as the true value of the real estate upon which the tax shall be paid; and an inventory thereof, made upon the basis of this appraisement, must be returned to the executor or administrator by whom it is to be returned to the Register of Wills; and this inventory as to both real and personal property must be filed by the executor or administrator within three months from the date of letters of administration (secs. 119, 126 of Art. 81, and secs. 212, 217 of Art. 93); certainly both of the things stated above are true; that is to say, (1) that the tax is imposed as of the death of the testator or intestate, and (2) that it is imposed upon the value of the estate as then ascertained.

As the beneficiaries under the will of Mrs. Johnston took under the will of Mr. Johnston in all respects as if they had been named therein, their estate was created by his will, although the fee did not become vested in them until the death of Mrs. Johnston.  Therefore, the value of the estate derived by them under the will of Mr. Johnston must be ascertained, for the purpose of taxation, as of the date of the death of Mr. Johnston by whose will they acquired the estate; because as we have seen as to all estates which are subject to the collateral inheritance tax, this tax is imposed upon the value of the estate at the death of the testator or intestate from whom the estate comes.

As by the will of Mr. Johnston, the rest and residue of his estate was left to his wife for life, the estate left to those who

were to take it after her death, was subject to her life estate. If that *reversionary* interest is to be valued as of the date of Mr. Johnston's death, its value would not have been the fee simple value of the estate, but only such part of that fee simple value as would be left after subtracting therefrom the value of the life estate of Mrs. Johnston; and it is only upon such value thus ascertained that the tax would have to be calculated; that is to say, applying this to the values contained in the admission of facts in this case, the tax in this case would be two and one-half per cent upon that portion of the $231,395.44 which would be left after subtracting therefrom what would be ascertained to have been the value of the life estate of Mrs. Johnston.

If there can be any recovery in this case, this should be the measure of the recovery; because (1) the value of the property subject to the tax was, by the provisions of the statute, its value at the time of the death of Mr. Johnston; and (2) the interest or estate which is to be valued is that which exists at the date of the death of the testator or interstate from whom the estate comes, and the reversionary interest, at the time of Mr. Jonhston's death was subject to the life estate of Mrs. Johnston.

But if it should be held that the value, for the purpose of the collateral inheritance tax, of the estate so coming into their possession, should be treated as the fee simple value, because when it did so come into their possession it was no longer subject to the life estate of Mrs. Jonhston, then the 2½ per cent must be calculated upon the $231,395.44, which was the value at the time of his death, of the rest and residue of Mr. Johnston's estate bequeathed by his will to his wife for life, and after her death to the beneficiaries named in will.

This being true, there is nothing in the provisions relating to the collateral inheritance tax, which are applicable to this case, which furnishes any foundation for the rule adopted by the State, and affirmed by the Court below; for this establishes, as the period of time for the ascertainment of the value of the

estate left by Mr. Henry E. Johnston in his will to the bene-
ficiaries in his wife's will, *a period nearly twenty years subse-
quent to the death of the testator from whom comes the property
which is to be subjected to the tax*.    I submit that it is impossible
to find in any of the provisions of the statute relating to the
collateral inheritance tax, which are applicable to this case,
anything upon which this principle of action can be sustained;
and that the selection of this period of time is not only with-
out any warrant in any of such provisions, but is directly in
the teeth of those provisions.

An examination of section 130 will show that it provides
for a case where under a will there *is a life estate* in property
given to one party, and the reversionary interest to another
party, and where *both the life estate and the reversionary in-
terest are given to persons not within the favored class mentioned
in section 117* (that is to say, father, mother, etc.) and there-
fore where both estates are subject to the tax.    In this case
the Orphans' Court is required to determine, *in its discretion*,
and at such time as it shall think proper, what proportion of
the tax the party entitled to the life estate shall pay, the de-
termination of the Court being made final and conclusive, and
the life tenant's portion must be paid within thirty days from
the determination; and *after the life estate is ended*, the Court,
from time to time, as the reversion vests in the party or
parties entitled thereto, shall determine *in its discretion* what
proportion of the residue of the tax shall be paid by the party
or parties in whom the estate shall so vest, the determination
of the Court being final, and each of the parties successively
entitled in remainder or reversion shall pay his proportion of
the tax to the Register of Wills within thirty days after the
date of said determination as to him.

This section while apportioning the tax between different
interests, makes no provision for any valuation of the prop-
erty; and therefore the tax apportioned is that which was
under the previous sections, directed to be paid upon the ap-
praised value of the property made at the time administration
of the estate was granted to the executor or administrator.

The reversionary interest in the rest and residue of the estate of Henry E. Johnston bequeated by his last will and testament, is not subjected, as the statute now stands, to the collateral inheritance tax, and therefore the Court below erred in granting plaintiff's first prayer, and refusing defendant's prayer.

It appears from the provisions of the statute, that the collateral inheritance tax is not, by said statute, imposed on any money or personal property constituting the subject of a legacy of a testator, unless it is the duty of the executor, and therefore within his power, before paying the said money or transferring the said property to the legatee, to deduct and retain in his, the executor's, hands (to be paid over to the Register of Wills as the representative of the State of Maryland) 2½ per cent. on every hundred dollars of said money and the appraised value of said property.

1. For the statute after, by said section 117. imposing the tax upon the transmission from a testator of personal property to legatees, proceeds, by section 118, to declare that the executor, before he pays the legacy liable to the tax imposed by section 117, shall deduct the amount of the tax from said legacy and pay the same to the Register of Wills for the State of Maryland.

Inasmuch as the 118th section declares that every tax imposed by section 117 in respect of property bequeathed to legatees, shall remain in the hands of the executor as the property of the State of Maryland, and be paid by him to the state, it follows that, if because of the provisions of section 117, which exempt from the tax the estates of certain beneficiaries, *it is not within the power of an executor to retain in his hands, out of the property, devised or bequeathed, the tax,* it must follow that it was not the intention of the Statute to subject such property to the tax.

The question whether a collateral inheritance tax is imposed by section 117 in respect of any property passing from a testator to his legatee, is therefore to be determined, *as the statute now stands*, by the determination of the question whether un-

der the provisions of said sections 117 and 118, the property comes into the hands of the executor in such a way as to enable him to retain in his hands the amount of the tax, as the money of the State.   If it is not possible for the executor so to retain this, then such impossibility takes such property out of the provisions of the law relating to the collateral inheritance tax.   The right and consequent duty of the executor to retain the tax in respect of any property passing from a testator under his will is the test whether that property is subject to the tax.

The provisions of the statute in reference to the payment of the collateral inheritance tax on real estate show that as to it no property is, as the statute now stands, subject to the collateral inheritance tax, unless it is the duty of the executor or administrator of the person from whom the property comes, upon the death of the latter, to collect the tax and pay it to the state.

By section 117 of article 81 of the code, any estate devised or bequeathed by a testator for the use of his wife, is exempted from the collateral inheritance tax.   Therefore, as no collateral inheritance tax was imposed on this life estate, Mrs. Johnston was entitled to have paid to her by the Trustees the whole income from the investments of this rest and residue, undiminished by any deduction from that income brought about in any way by any provision of the statute relating to the collateral inheritance tax.   This condition of things could only exist by the trustees under her husband's will having the right to demand, and receiving, from his executors, the whole principal of the rest and residue of the estate undiminished by any deduction therefrom of the 2½ per cent. on every hundred dollars of its value (which is the *quantum* of the collateral inheritance tax imposed by the statute on estates to which it is applicable), or by the deduction of any part of said taxes.

It necessarily follows from the foregoing, that Mr. Johnston's executors had not any right to deduct any amount in respect of this tax from the rest and residue before paying the same over, under the will of Mr. Johnston, to his trustees.

Inasmuch as by the will of their testator, the executors of Mr. Johnston were required, after ascertaining the rest and residue of his personal estate, to pay it over to the trustees constituted by him for the purpose of holding this rest and residue for the benefit of his wife for life, and after her death, for the other purposes set out in his will, this requirement of the will was the law regulating their action, in the absence of any statute of Maryland requiring other action on their part. There is no such statute.

Being, therefore, bound to pay over the principal of the personal estate constituting a part of the rest and residue, to the trustees to be held for the wife of their testatator for life, and to pay it over without making any deduction therefrom, because the said life estate was by the statute imposing the collateral inheritance tax, free of this tax, it was impossible for them to retain out of it any part thereof for the State. As, therefore, the law of the State prohibited the executors from retaining any part of this rest and residue for the State tax, and as only those estates are subject to the tax, the tax on which it is the duty of the executors to retain in their hands, it necessarily follows that, under the provisions of the statute, no part of, and no interest in, the rest and residue of the personal estate of Mr. Johnston was subject to the tax.

The same conclusion necessarily results in reference to that part of the rest and residue which consists of *real* estate. For by those provisions of the statute relating to the tax on real estate, to which reference has already been made, whenever any real estate is subject to the tax (section 121) the money needed for the tax is to be raised by the sale of the real estate by the executor or administrator (if the parties liable to pay the same do not furnish such executor or administrator the money within thirteen months from the date of the administration) (section 129).

As the life estate of the wife of the testator was not subject to the tax, she was not a party liable to pay the same, and as under the terms of her husband's will it was impossible to be known, until her death, to whom the estate would go after

her death, there was no one in existence, during the administration of her husband's estate, who was liable to pay the tax; the only way, therefore, in which the tax on the real estate (if this real estate was liable for the same) could have been raised, would have been by a sale of so much of it as was necessary, by the executors of Mr. Johnson's will. It was impossible that any part of it could have been lawfully sold, because to the extent of the sale the enjoyment of the income from the whole of the real estate during her life, to which the testator's wife was entitled under her husband's will, would have been destroyed, and this would be in the teeth of the 117th section of the statute, which excludes from the provisions of the law imposing the tax, all estates left to the wife of the testator.

There is nothing in the whole statute which contemplates the imposition of the tax on any estate except as of the date of the death of the testator or intestate from whom the property comes. The whole scheme of the law is based on the imposition of the tax as of the date of the death of the person from whom the property comes, and contemplates and requires the payment of the tax during the existence of the administration of the estate of such person.

There is nothing in the statute which makes it the duty of any one but the administrator or executor either to have made the ascertainment of the value of the property as the basis of the payment of the tax, or to pay the tax.

Therefore, *upon the trustees was conferred no right, and cast no duty*, as holders of the corpus of the rest and residue, at any time during their holding of it, either to ascertain the value of the reversion in the rest and residue, or having ascertained it to pay the tax thereon.

Although the Legislature had made provision for the ascertainment of what part of the tax the owner of the life estate, etc., shall pay, and what part the owner of the reversionary interest shall pay, *where each class of estates is subject to the tax*, no provision is made for the case which we have before us in the present action, that is to say, where the life estate is free of the tax because it is given to the wife of the testator.

The Legislature has thus, while recognizing that in the absence of the provision made by section 130, there existed no provision in the statute for making the tax applicable to a case where there is a life estate in one and a reversion in another, has chosen to enact the legislation contained in section 130, so as to make both the life estate and the reversionary estate subject to tax where neither of the estates were given to one of the favored class; yet has altogether omitted any similar provision in reference to dealing with the case where the life estate goes to one of the favored class.

It is manifest, therefore, that whether intentionally, or by inadvertence, the Legislature has left unmade any provision for taxing the reversionary estate where the life estate is owned by one of the favored class.

· *William S. Bryan, Jr., Attorney-General,* for the appellee.

On familiar principles, the execution of the power by Mrs. Harriet Lane Johnston is to be read as if a part of the will of Mr. Henry Johnston. *Conner* v. *Waring,* 52 Md. 732; 22 *Am. & Eng. Ency. of Law* (2 ed.), p. 1125.

So the liability to pay the tax is the same that it would have been if Mr. Henry Johnston had, in his will, bequeathed the property to his wife for life, and after her death to her executors, for the use of the corporations and individuals who are the beneficiaries under her will.

It is submitted that the plain words of the statute make it impossible to doubt that the remainder of Mr. Johnston's estate, after the death of his wife, is liable to this collateral inheritance tax.

The property being in Maryland and the title to it being transmitted only by the grace and favor of the Maryland laws of succession, the Legislature has the power to impose and has imposed a collateral inheritance tax on the property located here—"being in the State"—as against non-residents or aliens claiming such property by inheritance or under a will. *State* v. *Dalrymple,* 70 Md. 295; *State* v. *Dorsey,* 6 Gill, 388; *Montague* v. *State,* 54 Md. 487.

Whenever any person owes any tax *assumpsit* will lie upon the implied promise to pay the same arising from the duty to make such payment. *Bonaparte* v. *State*, 63 Md. 475; *Dashiell* v. *Baltimore*, 45 Md. 621.

In the Court below an ingenious argument was made on behalf of the appellant to the effect that this tax was not payable because it was not possible for the executors of Mr. Johnston to pay it, or indeed to know whether any collateral inheritance tax would be due, until Mrs. Johnston's will was admitted to probate and it was known who she would designate as the beneficiaries under her execution of the power given her in her husband's will. The inability of the executors of Mr. Johnston to know before the probate of Mrs. Johnston's will whether this tax would ever be payable may be a very good excuse for them for not sooner paying it, but it is submitted that it furnishes no reason why the present beneficiaries should enjoy the property free from the succession or inheritance tax which the law of Maryland plainly imposes upon *"all estates,"* which pass after the death of the donor, to collateral beneficiaries.

It is maintained that it is impossible that the Legislature could have intended that the fact that the identity of the beneficiaries remained uncertain until the death of the widow and life tenant, could affect the question whether or not this succession tax should be payable.

If Mr. Johnston in his will had bequeathed the property to his widow for her life, and after her death to the identical beneficiaries who take the same under Mrs. Johnson's execution of the power given her in that will, can there be any doubt that a collateral inheritance tax would be payable by the legatees in remainder?

It could not have been the intention of the Legislature that this collateral inheritance tax could be evaded by any skillful device of the draughtsman of a will. Every presumption in Maryland is against there being an exemption from any tax. All tax exemptions are strictly construed. *United Railways* v. *Balto. City*, 93 Md. 633, 634; *Sindall's case*, 93 Md. 529, 530; *Code of 1904*, Art. 81, sec. 4.

It was also urged upon the Court below on behalf of the appellant that this tax was not collectible, because the property which is claimed to be subject to it was never appraised for that purpose in the Orphans' Court.

It is submitted that there is nothing to justify the assumption that the General Assembly intended that the appraisement by the officers of the Orphans' Court, or of any other tribunal, should be a condition precedent to the State's right to receive this tax. Such a provision in the law would make it very easy for the executor or administrator to evade the payment of the tax by simply omitting to have the property appraised, and then taking advantage of his own wrong. Section 117 of Article 81 says in positive and direct language that *all* estates going to collateral beneficiaries after the death of the donor "shall be subject to a tax of two and a half *per centum* on every hundred dollars of the clear value of such estates, money or securities."

If the property has not been appraised, the Court or jury called on to fix the amount of the tax, can do so from the proof or admissions of the value of the property affected.

Interest was properly allowed by the learned Judge below from the date of the probate of the will of Mrs. Johnston. At that time Mr. Fisher could know who would be the beneficiary under the execution of the power in Mr. Johnston's will, and that a collateral inheritance tax was due. At the execution of the power of appointment the tax became due. 22 *Am. & Eug. Eney. of Law* (2 ed.) 1126. As it was Mr. Fisher's statutory duty to pay the tax on the date of the probate of the will, interest runs from that date. *Baltimore* v. *State*, 105 Md. 1.

The collateral inheritance tax was properly allowed on the amount of the estate which passed to the collateral beneficiaries. The State evidently intended to levy a tax of two and one-half per cent upon what the collateral beneficiary *enjoyed*. *State* v. *Dalrymple*, 70 Md. 305.

BRISCOE, J., delivered the opinion of the Court.

This is a suit by the State of Maryland to recover the collateral inheritance tax, alleged to be due from the estate of the late Henry E. Johnston.

The facts are undisputed and the question for determination rests upon the construction to be given to sec. 117, Art. 81, of the Code of Public General Laws.

The substance of the statute is as follows: All estates * * passing from any person who may die seized and possessed thereof, being in this State, or any part of such estate * * or interest therein transferred by deed, will, grant, bargain, gift or sale, made or intended to take effect in possession after the death of the grantor * * devisor or donor, to any person or persons, bodies politic * * in trust or otherwise, other than to or for the use of the father, mother, husband, wife, children and lineal descendants of the grantor * * testator, donor * * *, shall be subject to a tax of two and a half *per centum* on every hundred dollars, of the clear value of such estates, money or securities.

Mr. Johnston died on the 5th of May, 1884, leaving a large and valuable estate, consisting of real and personal estate.

The will was duly admitted to probate in the Orphans' Court of Baltimore City, and the trustees under the will duly qualified as such.

By his will he gave and devised the entire rest and residue of his estate, real and personal, to certain trustees (Messrs. Josiah L. Johnston, Wm. A. Fisher and W. Graham Bowdoin), in trust, for his wife, Harriet Lane Johnston, for and during the term of her natural life and after the death of his wife, "in trust to hold the entire *corpus* of the residuum of the estate to the use of such person and persons, whether natural or corporations, to whom my wife may give and appoint, by any instrument in the nature of her last will and testament;" and if she should fail to execute a last will and to make such appointment, then, in trust, to hold the *corpus* of the residuum of the estate, to the use of the Harriet Lane Home for Invalid Children of Baltimore City."

On the 11th of May 1885, upon the settlement of the estate his executors transferred to the trustees under the will, the rest and residue of the personal estate, amounting to $188,395.44.

The real property comprising a part of the estate, amounting to $43,000.00 also passed to the trustees, thus making the total value of the residuum of the estate transferred to the trustees, under the will, the sum of $231,395.44.

Mrs. Johnston died on July 3rd, 1903, leaving a last will and testament, which was duly admitted to probate in the city of Washington, on November 3rd, 1903.

By her will, she executed the power of appointment vested in her by the will of her husband by devising and bequeathing the entire rest and residue of the estate, real and personal of her husband, to her executors, in trust, to allow her brother-in-law, to enjoy a life estate therein, if he so desired, and as to the rest and residue, to the Harriet Lane Home for Invalid Children of Baltimore City,

On the 14th of March 1904, Mr. Fisher, the surviving trustee, transferred all the residuum of the estate to Mrs. Johnston' executors, except the sum of $25,000. retained by him to meet any claim of the State for the collateral inheritance tax, here in controversy.

It is admitted, by the record, and charged in the declaration, that the residuum of Mr. Johnston's estate had increased, until at the time of the death of Mrs. Johnston it amounted to $734,439.36. . That Josiah L. Johnston and W. Graham Bowdoin are dead, and the defendant, D. K. Este Fisher is the surviving trustee, and that no collateral inheritance tax has been paid to the State, by the trustees of the estate.

The case was tried before the Court, without a jury, and the judgment being in favor of the State, the defendant has appealed.        .

The declaration, in the case contains two counts.    The first count charges that the State is entitled to recover a tax, on the value of the rest and residue of the estate transferred by the executors of Mr. Johnston to the trustees on the 11th of May, 1885.

The second count claims the tax on the rest and residue of the estate, at the date of the death of Mrs. Johnston, on July 3rd, 1903.

It is contended on the part of the appellant 1st, that upon a proper construction of the Maryland statutes, relating to the payment of collateral inheritance tax, in connection with the facts of this case, the State cannot recover any part of the amount claimed in either count, in the declaration.    Secondly: that if the state can recover at all, it can only recover two and one-half per cent on the value of the reversionary interest in the rest and residue of the estate, at the time of the death of the testator, Henry E. Johnston and upon the value of the estate as then ascertained.

In the case of *Tyson et al* v. *State*, 28 Md. 577, and *State* v. *Dalrymple*, *Admrs.*, 70 Md. 298, this Court held, that such a tax was free from all constitutional objection.    In the latter case, it was said, in permitting property within the State, upon the death of its owner, to pass by devise or descent or distribution, the Legislature has seen fit, where strangers or collateral kindred receive it, to exact as the condition upon which that privilege is granted, the tax in question.

And upon the question of the collection of the tax, the Court said that ample provision is made for every possible *contingency that may arise*, whether the decedent be a resident of this State or not, provided the property be located here if he be a non-resident or be actually or constructively here, if he be a resident.    No estate can escape administration if the law be enforced and when the property passes into the hands of the executor   *   *   *   his obligation to pay the tax is fixed and his bond at once becomes liable therefor.

There can be no doubt, it seems to us, that under sec. 117 of Article 81, above quoted, that the Johnston estate is liable for the collateral inheritance tax claimed by the State.

The language of the statute is plain and direct, that *all estates* passing from any person who may die seized and possessed thereof   *   *   *   transferred, by deed, will   *   *   * to take effect in possession after the death of the grantor, de-

visor or donor, not within the excepted classes, shall be subject to this tax.

The manifest intention of the Legislature was to tax the transmission of all property to collaterals situate in the State, as provided by the statute, and to require the payment of the tax as a premium for the enjoyment of the benefit thereby secured.

In *State* v. *Dalrymple*, 70·Md. 295, it is said that one of the conditions upon which strangers and collateral kindred may acquire a decedent's property, which is subject to the dominion of our laws, is, that there shall be paid out of such property a tax of two and a half per cent. into the treasury of the State.   This, therefore, is not a tax upon the property itself, but is merely the price exacted by the State, for the privilege accorded, in permitting property so situate to be transmitted by will or by descent, or distribution.

Because the statute does not contain a special provision for the ascertainment and collection of the tax cannot defeat the State's right to a recovery.   It was distinctly held in *Montague* v. *State*, 54 Md. 487, that if an admistrator or executor actually pays over money of his decedent to a collateral distributee or legatee without retaining therefrom this tax, it becomes, to the extent of the tax, money had and received by him for the use of the State and an action may be maintained against such distributee or legatee therefor.   *Dashiell* v. *Baltimore*, 45 Md. 621; *Bonaparte* v. *State*, 63 Md. 475.

In the case at bar, we think it is plain that upon probate of the will of Mrs. Johnston, she having executed the power vested in her, by her husband's will, the estate thereupon became subject to the collateral inheritance tax, imposed by the Act.

It is urged, however, by the appellant, that upon whatever estate the collateral inheritance tax is imposed by the statute, it is imposed as of the death of the testator, (Mr. Johnston) from whom the estate comes, and not upon the value of the estate, at the time of the death of Mrs. Johnston.

This contention, we think, is answered by the statute itself.

The tax is imposed upon the clear value of all estates passing by will or otherwise, at the time it is transferred and received by the collateral beneficiary.

The tax is on the transmission of the property, and upon the estate the beneficiary is to receive and enjoy.   There could be no transfer or enjoyment of the property, by the beneficiary in this case' until the death of Mrs. Johnston, and this being so, the collateral inheritance tax was payable, upon the clear value of the estate, at her death, and at the time, the collateral beneficiary received the benefit of the bequest and devise, under the will.   In other words, the tax is imposed upon the clear value of the estate, at the "passing and transferring" of the estate to the collateral beneficiary.

In *Dalrymple's case, supra*, this Court said, the amount of the tax will depend upon the sum in the hands of the administrators payable to the legatee.

It seems to be clear, therefore, without further discussion of the other questions raised on the record that the Court properly sustained the demurrer to the appellant's second plea, and committed no error in granting the State's first and sixth prayers, and in rejecting the defendant's prayer.

It will be seen that the plaintiff's first prayer properly announced the law of the case.   It is as follows:   "The State prays the Court to rule, as a matter of law, that as it is admitted that the trustees holding the residuary devise and legacy under the will of Henry E. Johnston, of whom D. K. Este Fisher is the surviving trustee, have received from the executors of Henry E. Johnston, the said residuary devise and legacy, under the said will, and as it appears from the wills of Henry E. Johnston and Harriet Lane Johnston, admitted in these proceedings, that the said residuary devise and legacy in the said will of the said Henry E. Johnston, after the termination of the life estate of Harriet Lane Johnston (which life estate has terminated) is subject, under the laws of the State of Maryland to a collateral inheritance tax, the verdict in this case must be for the plaintiff."

The sixth prayer, relates to the amount to be recovered,

with interest from the date of the probate of the will of Harriet Lane Johnston, and there can be no question as to its correctness under the construction we have given the statute. The defendant's prayer was properly refused; it denied a recovery on any part of the amount claimed in either of the counts in the declaration.

For the reasons given the judgment will be affirmed, with costs.

*Judgment affirmed with costs.*