## WALLACE *against* JAMES and JOHN BAKER.

*Tuesday,*
*April 4th.*

### IN ERROR.

The defend-
ant agreed in
writing that
a house upon
which he
had a claim of
6000 dolls.
should be
sold and
bring 8000,
and that the
difference
between his
claim and
that sum
should be
paid to the
plaintiffs;
it is not com-
petent to
him to give
parol evi-
dence that it
was not
*intended* by
him to pay
any money,
except the
surplus,
whatever it
might be,
that the
house should
bring above
6000.
Declarations
made by the
party at the
time of exe-
cuting a
written
agreement,
not evidence,
if not com-
municated
to the other
party.
The declara-
tion laid a
request to

ERROR to the common pleas of *Philadelphia* county. The record was of an action *of assumpsit* by the *Bakers* against *Wallace*, the declaration in which contained four counts:

The 1st count laid a colloquium on the 23d *June* 1804, between the plaintiffs and defendant, concerning the sale of goods by the plaintiffs to a certain *Robert Berrett* and *Andrew C. Smith*, and concerning the sale of a house occupied by *Berrett* on which the defendant had a claim of 6000 dolls. and an agreement by the defendant that the house should be sold and bring 8000 dolls.; and that the difference between that sum and 6000 dolls. should be paid to the plaintiffs in part payment of the goods. It then stated that upon that discourse the plaintiffs agreed to sell and deliver the goods to *Berrett* and *Smith*, in consideration whereof the defendant agreed to guarantee to them that the house should be sold and should bring 8000 dolls. and that the difference between that sum and his claim of 6000 dolls. should be paid to the plaintiffs; and that afterwards, to wit, the day and year aforesaid, the defendant, in consideration of the agreement aforesaid, and also in consideration that the plaintiffs had promised to perform all things in the agreement on their part to be performed, promised to perform all things, &c. on his part. It then averred a performance by the plaintiffs, and that, although the defendant in pursuance of the agreement paid 1000 dolls. parcel of the 2000 dolls. the difference, &c. he had not sold or caused to be sold the said house, nor paid or caused to be paid the said 1000 dolls. residue, &c. (*although to do this*, the defendant *afterwards, to wit, the day and year aforesaid*, at the county aforesaid, and often afterwards *was requested* by the plaintiffs.)

The 2d count laid the colloquium between the plaintiffs, *Berrett* and *Smith*, and the defendant, and that *B.* and *S.* had

sell the house and to pay the money, "on the day and year aforesaid," which was the day of the contract. *Held*, that the request is well laid, though the defendant has a reasonable time to sell the house and pay, after the contract.

proposed to the plaintiffs to sell the goods, and had offered to  1809.
pay for them partly by the sale of the house, the proceeds of  WALLACE
which above 6000 dolls. the plaintiffs were to receive, and       *v.*
partly out of their proper funds, to which the plaintiffs assent-  BAKER.
ed. And that the defendant in consideration that the plaintiffs
would sell, &c. assumed·that the house should be sold and
bring 8000 dolls. and so on, as in the first count, omitting the
partial payment.

The 3d count laid that in consideration the plaintiffs at the
request of the defendant, would sell and deliver to *Berrett* and
*Smith*, divers goods to the value of 10000 dollars, the defend-
ant undertook and promised in writing that he would thereby
guarantee to them that the house then occupied by *Berrett*
should be sold and bring 8000 dolls. and that the difference
between his claim of 6000 dolls. and that sum should be paid
to them. That the plaintiffs confiding therein, did at the defend-
ant's request, sell and deliver, &c. of which the defendant had
notice; by reason whereof, and according to the tenor and effect
of the said promise, the defendant became liable to pay the
difference between 8000 dolls. and 6000 dolls. to wit, 2000
dolls. and being so liable he promised to pay, when he should
be thereto afterwards required.

The 4th was a count for goods sold to *Berrett* and *Smith*,
at the special instance and request of the defendant.

Upon the trial of the cause it appeared that *Berrett* and
*Smith* were in treaty for the stock in trade of the plaintiffs, and
that *Smith* had negotiated with the defendant to give the en-
gagement which was the ground of action. This engagement
and two notes which preceded it, were as follows:

" Messrs. *Berrett* and *Smith* will have the goodness to say
" whether they have determined with respect to the stock; as
" we have been and are hourly deprived of making sales, which
" is a serious disappointment and loss. If Mr. *Wallace* is de-
" termined on selling the house, we presume he can have no
" objections to saying *he will pay us the difference between his*
" *claim and the amount.* We are &c."
                              " *James and John Baker.*"
" 22d *June* 1804·"
" To *Berrett* and *Smith.*"

WALLACE
v.
BAKER,

1809.

"*Gentlemen,*

"Mr. *Wallace* assents to your proposals in your note of "being answerable for *whatever sum the house may bring over* "*his claim of* 6000 dolls, which shall be accomplished as soon "as possible, and you receive the cash from him."

"*Berrett and Smith.*"

"To *J. and J. Baker.*"

"I agree to the above.
"*Burton Wallace.*"

"I do hereby guarantee to Messrs. *James* and *John Baker* "that the house now occupied by Mr. *Robert Berrett* shall be "sold, and bring eight thousand dollars, and the difference be- "tween my claim of six thousand dollars and that sum, shall "be paid them."

"*Burton Wallace.*"

"*Philadelphia, June* 23, 1804."

The defendant offered a witness to prove that it was never *intended by him* that he should pay or deliver to the plaintiffs any money whatever, but the surplus, *if any there should be*, beyond the sum of 6000 dolls. expected to arise from the sale of the house. He also offered to prove the declarations of *Andrew Smith* on whose instance and behalf he entered into the engagement, and the declarations and understandings of *Smith* and himself, before he signed the engagement of 23d of *June*, although the plaintiffs were not present when they were made. But the evidence was overruled by the court. The court then charged the jury that the defendant was bound to sell the house in a reasonable time, and that the contract being made the 23d of *June* 1804, and the action brought in *May* 1805, they were competent to say whether reasonable time had been allowed; that the note was not void under the act of frauds and perjuries; that the demand, not being for a precedent debt or duty, the declaration had duly stated a special request, of which evidence had been given that they were to decide upon; and finally that the consideration of the agreement was valid, the plaintiffs having in consequence of it parted with their property. To this opinion and charge the defendant tendered a bill of exceptions, which the court allowed, and the jury found for the plaintiffs.

*C. J. Ingersoll*, for the plaintiff in error, made three points. 1. That the parol evidence was improperly rejected. 2. That no request was sufficiently laid in the declaration. 3. That the contract was without consideration, and void.

1809.

WALLACE
*v.*
BAKER.

1. The instrument of 23d *June* was merely a parol agreement: it is so declared upon; and therefore was liable to be affected in every way by parol evidence. But giving it even the sanctity of a deed, the evidence was proper under the *English* cases, and most clearly under our own. The object was to add a condition to the agreement; that is, to pay 2000 dollars, *provided* the house was sold and brought 8000 dolls. which was clearly the intention of the plaintiff's note of 22d *June;* this was allowed in *Snowball* v. *Vicaris.* (*a*) It is not necessary that the parol evidence should go to establish a trust or fraud; it is allowed to take away a legacy, *Bigelston* v. *Grubb,* (*b*) to shew a mistake, *Joynes* v. *Statham,* (*c*) and to shew that a written agreement has been discharged. *Pitcairn* v. *Ogbourne.* (*d*) In all these cases it was allowed to vary and contradict the writing. The case of *Meers* v. *Ansell,* (*e*) upon the authority of which it was ruled against us below, is too strict, and has been shaken by subsequent decisions. *Doe* v. *Burt* (*f*), *The King* v. *Scammonden* (*g*), *Small* v. *Allen* (*h*). But in *Pennsylvania*, we have carried the rule further than in *England.* In *Thompson's Lessee* v. *White,* (*i*) the rule in *Harvey* v. *Harvey* (*k*) that parol evidence may be given of declarations made before the execution of a deed, to shew the design with which it was executed, was adopted by the whole court; and in *Field* v. *Biddle* (*l*) parol evidence was admitted to prove an agreement that an absolute bond should be void, unless a ratification of certain articles of composition should be sent from *England* in six months. Mr. Justice *Bradford* appeared to think it was going much further than the *English* books, but he said he was bound by *Hurst* v. *Kirkbride*, the particulars of which are not reported.

2. The special counts in the declaration conclude with a *licet sœpe requisitus;* and although the two first, in addition to this, lay a time, it is the same time with the contract, which was before the lapse of a reasonable time, when the duty arose. The

(*a*) *Bunb.* 175.
(*b*) 2 *Atk.* 47.
(*c*) 3 *Atk.* 387.
(*d*) 2 *Ves.* 378.

(*e*) 3 *Wils.* 275.
(*f*) 1 *D. & E.* 701.
(*g*) 3 *D. & E.* 474.
(*h*) 8 *D. & E.* 147

(*i*) 2 *Dall.* 425.
(*k*) 2 *Cha. Ca.* 180.
(*l*) 2 *Dall.* 171.

1809.

WALLACE
v.
BAKER.

sale of the house was a collateral duty arising upon demand after reasonable time, and therefore a special demand was necessary. *Birks* v. *Trippett* (a), *Selman* v. *King* (b). And the request before reasonable time will not answer, for it should be made, when the duty ought to be performed. *Fitzhugh* v. *Dennington.* (c)

3. There was no consideration moving to or from the defendant; he was a stranger, and the agreement a mere curtesy. *Crow* v. *Rogers.* (d)

*Newcomb* and *S. Levy* for defendants in error. The case is entirely clear of the decisions upon parol evidence. The evidence offered, was of the defendant's *intentions*, never communicated to the plaintiffs, and of declarations made in their absence, but without stating of what nature, or at what time. The agreement being in writing and very explicit, no intentions or declarations not communicated to the plaintiffs could form a part of it. *Smith*, to whom they were made known was not their agent, but the object of the contract; and it would be opening a door to the most terrible frauds, to trip up the holder of a positive agreement by secret declarations to a third person. But it was properly rejected, relation being had to the agreement's being in writing. *Meers* v. *Ansell* has never been overruled. *Doe* v. *Burt* turned upon the construction of the writing on its face. In *The King* v. *Scammonden* the evidence was allowed merely to shew a different consideration from that expressed in the deed; and in *Small* v. *Allen* it was admitted to defeat a fraud. The case was affirmed in *Preston* v. *Merceau.* (e) The rule in *Pennsylvania*, is the same as in *England;* for by a note of C. J. *Shippen*, *Hurst* v. *Kirkbride*, which has been thought to vary the rule, turns out to have been a case of gross fraud. Parol evidence is allowed in the cases of trust and fraud; it is also allowed to explain ambiguities, but never to vary or contradict the written instrument. And so are the cases from *Dallas*. *Peake's Ev.* 112. 114. *Finney* v. *Finney.* (f) Here there is not a suggestion of fraud. The agreement of 22d *June* was altered on the 23d, and the object of the evidence was to set up the first agreement.

(a) 1 *Saund.* 33.        (c) 6 *Mod.* 227. 260        (e) 2 *W. Black.* 1249.
(b) *Cro. Jac.* 183.       (d) 1 *Stra.* 592.            (f) 1 *Wils.* 34.

There is a request laid both in time and place, and the only 1809.
question is whether the time was proper, being laid on the WALLACE
same day with the contract. In the first place, this was not a v.
duty *arising* upon demand, but merely *payable* on demand; it BAKER.
was not a collateral, but an original undertaking; *Bull. N. P.* 280.
*Capp* v. *Lancaster* (a), and *Harwood* v. *Turberville.* (b) Then
even if it arose upon demand, it did not arise after a particular
time had elapsed, so as to require a demand after that time,
which was the case of *Fitzhugh* v. *Dennington;* but no time
was appointed, and then the request might be made immedi-
ately, and the party left a reasonable time afterwards, which is
the distinction of *Holt* in 6 *Mod.* 260. *Wallace* however paid
1000 dollars, which acknowledged a demand, as well as
reasonable time.

The consideration is too plain for argument. The agreement
was in consideration that the plaintiffs would sell goods to a
third person, which they accordingly sold. Loss to the plain-
tiff is as good a ground of contract as benefit to the defend-
ant. 1 *Pow. Con.* 344. 1 *Fonbl.* 336.

*Ingersoll* in reply. The effect of the evidence is one thing;
whether it should have been heard is another. As a general
principle, independent of statutes, there is no difference be-
tween contracts by word of mouth, and contracts in writing
not under seal. *Rann* v. *Hughes.* (c) They are all parol. The
agreement here is declared upon as parol. If it is not, how do
they find out the consideration? The instrument expresses
none; and the plaintiffs are therefore in the dilemma of allow-
ing it to be parol, and then it is open to every proof, or all
written, and then it is bad for want of consideration. The de-
clarations it is true varied the writing; but they must have been
made at the time of signing it, for on the day before, the con-
tract was clearly against the plaintiffs; they therefore come
within *Hurst* v. *Kirkbride*, where declarations at the time were
allowed to contradict the deed. Both declarations and inten-
tions must have been offered to shew that the defendant was
cheated, which makes it a case of fraud; whether the plaintiffs
knew it, should have gone to the jury. The request to sell the

(a) *Cro. Eliz.* 548.        (b) 6 *Mod.* 200.        (c) 7 *D. & E.* 351. *note.*

1809.

WALLACE

_v._

BAKER.

.house and to pay the money is laid as all one act; whereas the defendant unless hastened to do both, had his life to do them in.

TILGHMAN C. J. This case arises on a writ of error to the court of common pleas of the county of _Philadelphia._ Annexed to the record is a bill of exceptions, stating several exceptions to the opinion of the court. The principal and indeed the only one of any weight, is that to the rejection of the parol testimony offered by the defendant, in contradiction to the writing on which the plaintiff founded his action. There have been many decisions in this court in favour of the admission of parol evidence, even in contradiction to written instruments. These decisions have been chiefly in cases of _fraud_ and of _trust._ I think the law will be found accurately stated in the _Lessee of Thompson and wife_ v. _White,_ 1 _Dall._ 424. where C. J. _M'Kean_ delivered the opinion of the court after full consideration. The leading case on this subject is that of _Hurst's Lessee_ v. _Kirkbride,_ tried at nisi prius in _Bucks_ county 24th of _March_ 1773. As that case has been often cited and relied on by counsel and recognised by the court, and is not in print, I have procured a state of it from the notes of C. J. _Chew,_ who was counsel for _Kirkbride._ The plaintiff _Timothy Hurst_ claimed the manor of _Pennsbury_ under a deed from _Robert Edward Fell._ This deed (dated 10th of _May_ 1770, and made in pursuance of and in exact conformity to articles of agreement dated 10th of _April_ 1770) after describing a large lot of ground on _South street_ in the city of _Philadelphia,_ contained general expressions, comprehending all the grantor's lands in _Pennsylvania,_ and elsewhere in _America._ The counsel for the defendant offered to prove by parol testimony, that it was not the intent of the parties to convey the manor of _Pennsbury,_ and that the sale of the manor was excepted at the time of executing the articles and deed. The court, after argument, permitted evidence to be given by _William Parr_ the conveyancer who drew the writings, of conversations which he had with the parties when he received his instructions for drawing the writings, and while he was drawing them; and also that immediately after _Fell_ had signed and sealed the writings, before he rose from his chair, and before the witnesses had signed their names, he mentioned the manor of _Pennsbury_ to _Hurst,_ who answered, " As to the manor, sir, I

" will treat with you about it another time." The truth was, that *Fell* had not a good title to the manor, and had afterwards sold it to *Kirkbride*, not in his own right, but as attorney for the real owners in *England*. Now it was a gross fraud in *Hurst*, after all that had passed, to set up a claim to the manor, under the deed from *Fell*. But neither that case, nor any other which has been cited for the plaintiff in error will support the exception to the opinion of the court of common pleas. Let us examine the evidence which was rejected. The defendant below offered to prove " that it was never intended *by him*, that he " should pay or deliver to the plaintiffs any money whatever, " but the surplus, if any there should be, beyond the sum of " 6000 dolls., expected to arise from the sale of the house." But it does not appear that such intention was ever made known to the plaintiffs, and therefore it ought not to affect them. The defendant offered to prove further " the declara- " tions of *Andrew Smith*, at whose instance and request, and " in whose behalf the defendant entered into the said writing, " and the declarations and understandings of the said *Andrew* " *Smith* and of the defendant, before he signed the said writing, " although the plaintiffs were *not present* at the time of making " the said declarations." The bill of exceptions is defective in not stating what these declarations and understandings were. The court should be informed of their nature. But whatever they might have been, they were improper evidence, because the party to be affected by them was absent, nor can we presume that he ever heard of them. It is not stated that *Andrew Smith* was in any manner the agent of the plaintiffs; if he had been, the case would have been very different. The matter then is simply this. The defendant executes a writing, on the faith of which the plaintiffs part with valuable property, and afterwards wants to prove that before he signed it, he had *intentions* and made *declarations* tending to render it of no value, which were never communicated to the plaintiffs. Under these circumstances is there any *fraud* in insisting on an exact fulfilment of the written engagement? Or is there any justice in permitting the plaintiffs to be affected by the evidence of matters, unknown to them when they made their contract? It is very clear that this testimony was properly rejected.

The *second* exception is, that the plaintiffs did not lay in their declaration, a special request to perform the guarantee,

1809.

WALLACE
v.
BAKER.

nor did they *prove* such request. I think the request is sufficiently set forth in the declaration; and as to the proof, the judge submitted the case to the jury on the evidence, so that there could be no error in law, in that.

The *last* exception is, that there was no *consideration* for the defendant's assumption. This exception must have been taken in a hurry; it is expressly laid in the declaration, that in consideration of the defendant's guarantee, the plaintiffs sold and delivered to *Berrett* and *Smith*, goods to a large amount.

My opinion upon the whole is, that the judgment of the court of common pleas be affirmed.

YEATES J. concurred.

BRACKENRIDGE J. was holding a court of nisi prius, during the argument of this cause, and gave no opinion.

Judgment affirmed.

END OF MARCH TERM, 1809.