## AMERICAN RAILROAD COMPANY OF PORTO RICO v. HERNÁNDEZ.

### APPEAL from the District Court of San Juan.

No. 62.—Decided June 1, 1905.

JURISDICTION.—Even though the parties may not have raised the question of jurisdiction the court may, however, upon its own motion consider the same, and jurisdictional questions should be disposed of before entering upon a decision of any of the other matters involved.

ID.—LAWS OF PROCEDURE—RETROACTIVE EFFECT.—It is a principle of Spanish law recognized by the jurisprudence of the highest courts of the Union, that laws governing jurisdiction and procedure are matters of public interest and have a retroactive effect; that is to say, they are not considered as of a retroactive character, in such a sense that they are included in the provisions of article 3 of the Civil Code.

ID.—In order that the Supreme Court may render a judgment in any case it must have jurisdiction of the same, not only at the time the question is submitted for its consideration, but also at the time the decision is rendered, as otherwise the judgment would be *coron non judice* and null and void for want of jurisdiction.

ID.—If the law conferring jurisdiction upon the Supreme Court is modified after the filing of a complaint or after judgment has been rendered in the trial court, or after the case has been presented before the Supreme Court and submitted for its decision, but before final judgment is rendered therein, the court will be governed by the law in force at the time such final judgment is rendered.

ID.—REPEAL OF A LAW CONFERRING JURISDICTION.—The expressed or implied repeal of a law conferring jurisdiction on a court deprives it of the right to exercise such jurisdiction, and therefore all proceedings pending before such court, either for trial or on appeal, must cease together with the law so repealed, unless such law contained a saving clause excluding such cases or proceedings from the effect thereof.

The facts are stated in the opinion.

*Mr. Luis Freyre Barbosa* for appellant.

*Mr. Bosch* for respondent.

Mr. JUSTICE MACLEARY delivered the opinion of the court.

A brief history of this case is necessary to fully understand the questions involved. On the 16th of March, 1904, Segundo Setty, acting as agent for the American Railroad Company of Porto Rico, brought an action in the Municipal Court of San Juan against Francisco Hernández for damages

in the sum of $116.10, caused by an ox belonging to the said Francisco Hernández straying upon the track of the said railway company and derailing the engine thereof, and damaging the said engine and also the railroad track, and delaying the passenger train.

The defendant, through his attorney, Wenceslao Bosch, answered the complaint, denying the facts set out therein, and filing a cross complaint in the said municipal court, alleging various matters of defense and praying for a dismissal of the action filed by the agent of the railroad company, and that the court render a judgment against the said company, condemning it to the payment of $45 damages, the value of the ox killed in the collision, and that the costs of the proceedings be taxed against the said plaintiff.

After the proceedings usual in such cases, the introduction of evidence, and so forth, judgment was rendered in the Municipal Court of San Juan against the plaintiff, the American Railroad Company, and in favor of the defendant, for $45, the value of the ox, and the costs of the proceedings.

From this judgment the railroad company took an appeal to the District Court of San Juan, and the said court on the 17th of September, 1904, after hearing the pleadings filed, the evidence presented by both parties, and the arguments of counsel, rendered a judgment against the American Railroad Company of Porto Rico and in favor of the defendant, Francisco Hernández, on his cross complaint, adjudging that the latter recover from the former as damages for ox killed the sum of $45, without special assessment of costs.

From this judgment of the district court, on the 15th of October, 1904, the plaintiff railroad company took an appeal to the Supreme Court. The case was heard in the Supreme Court on the 3d day of February, 1904. Counsel for the appellant, Luis Freyre Barbosa, and for the appellee, Wenceslao Bosch, appeared personally for their respective clients and argued the case orally.

Although no suggestion has been made at any stage of the proceedings of a want of jurisdiction in this court to hear and determine the appeal, still a question of jurisdiction arising must be taken notice of and decided by the court before any other matter can be considered. If this court has no jurisdiction of the case, or having had jurisdiction at the time the appeal was taken has since lost that jurisdiction, no judgment can be rendered herein. This is a well established principle supported by many authorities.

The jurisdiction of the Supreme Court of Porto Rico is founded upon the Organic Act passed by the Congress of the United States on the 12th of April, 1900 (31 United States Statutes at Large, chap. 191, p. 84). In section 33 of the said act conferring jurisdiction on this court, it is provided that the Legislative Assembly of Porto Rico "shall have authority to legislate from time to time as it may see fit with respect to said courts, their jurisdiction, their procedure, and all other matters affecting them."

In the same manner jurisdiction is conferred upon the Supreme Court of the United States by the Constitution of the United States, with "such exceptions and under such regulations as Congress shall make."

The Legislative Assembly of Porto Rico has from time to time made changes in the jurisdiction of this court by various legislative acts, one of which changed the court from a court of cassation to a court of appeals, giving it authority to review the whole of any case brought before it on appeal, both on the law and the facts, either on the criminal or civil side of the docket, and to affirm, reverse, or modify the judgment of the court below, rendering a new judgment in such cases as require it, and if necessary, remanding cases to the trial court for a new hearing. This statute changed the entire method of proceeding in this court, rendering the practice much more flexible, and enabling the court to be much more efficient in the administration of justice. Other changes in

. the jurisdiction of this court and of the district courts have been made from time to time by the Legislative Assembly as circumstances seemed to require.

In the same manner the Congress of the United States in accordance with the Constitution, which was ordained and established prior thereto, on the 4th of September, 1789, at its first session, then passed the Judiciary Act, establishing the judicial courts of the United States and providing for the organization of the Supreme Court of the United States, and prescribing regulations for the exercise of its jurisdiction. Congress has from time to time, in accordance with the Constitution, and in subordination thereto, made changes in the appellate jurisdiction of that high tribunal and such action on the part of the legislative authority has always been respected and conformed to by the Supreme Court of the United States.

The Code of Civil Procedure passed by the Legislature of Porto Rico on the 10th of March, 1904, and, taking effect on the 1st of July of the same year, allowed appeals to be taken to this court from judgments of the district courts in civil cases which had been appealed thereto from the municipal courts without regard to the amount in controversy. (See the Code of Civil Procedure, section 295.) This law granting appeals in such cases was changed on the 9th of March, 1905, by adding to the second paragraph of section 295 a limitation expressed in these words: ''Should the value of the property claimed, or the amount of the judgment, not including products and interests thereon, exceed three hundred dollars ($300). (See Laws of 1905, page 137).

The question presented for our decision is: Does this amendment to the Code of Civil Procedure affect a case in which an appeal had been taken to this court, a hearing had on oral argument, and which was pending for decision, before the passage of this act? It has been suggested that cases thus situated could not be affected by legislative action alter-

ing the jurisdiction of this court, and that Article 3 of the Civil Code reading: "Laws shall not have a retroactive effect unless they expressly so decree," applies to this case and retains it within the jurisdiction of this court. But it appears from the learned annotations to that article in the original Spanish that it is a principle of the Spanish law that statutes regulating jurisdiction and procedure are in the interest of the public and take effect retroactively, or rather are not regarded as retroactive in such a sense as to fall under the restrictions of this article. This doctrine is also in accordance with the decisions of the American courts of last resort.

And, moreover, under the American jurisprudence it is clear to the reflecting mind that the law of the 9th of March last cannot be considered as having a retroactive effect, although it may affect the jurisdiction of this court. The influence which it exerts on that jurisdiction is a present and continuing one. This court, in order to reach a decision, must not only have jurisdiction of a case when it is filed herein for cognizance, but it must have jurisdiction at the time the final judgment is rendered. If there is no jurisdiction of a case in which a judgment is rendered at the time of the rendition of the judgment, such judgment is *corom non judice,* and void for want of jurisdiction.

A case exactly in point was decided by the Supreme Court of Indiana as long ago as 1839. The court in its opinion says:

"We acted upon this principle in dismissing several suits at the last term. * * * By the statute of 1831, a case which had originated before a justice of the peace, and had been taken by appeal to the circuit court, might be brought to this court by a writ of error or appeal, if the amount in controversy inclusive of interest and costs, amounted to $20. * * * The statute of 1838 deprived us of jurisdiction in such cases, unless the amount in controversy, exclusive of interest and costs, amounted to $20. * * * The cases which had been brought up under the statute of 1831, and did not come within that of 1838, were dismissed for want of jurisdiction." (*Hunt et Ux.* v. *Jenning,* 5 Blackford, 195; 33 Am. Dec., 466.)

(In support of this principle see the following authorities: *Insurance Company* v. *Ritchie*, 72 U. S. [5 Wallace], 541; *Norris* v. *Crocker*, 54 U. S. [13 Howard], 429; *Yeaton* v. *United States*, 5 Cranch, 281; *Detroit* v. *Chapin* [Mich.], 37 L. R. A., p. 398; *Key* v. *Goodwin*, 4 Moore & P. [Eng.], 341; *Stoever* v. *Immell*, 1 Watts. [Penn.], 258; *Butler* v. *Palmer*, 1 Hill, 324 [N. Y.]; *Hampton* v. *Conn.*, 19 Pa., 329; Cooley, Cons. Lim., 469, and cases cited in note 5 *a;* Sedgwick on Stat. and Cons. Law, 112; Sutherland, Stat. Cons., p. 221, sec. 164; Dwarris on Stat., 538; 1 Kent's Com., 465, and cases cited in note *d.*)

Jurisdiction has been defined to be the authority by which judicial officers take cognizance of and decide cases, or the power to hear and determine a case, or the right of a judge to· pronounce a sentence of the law on a case or issue pending before him, acquired through due process of law. It includes power to enforce the execution of·what is decreed, and it may be said to be the right to adjudicate concerning the subject-matter in a given case. To constitute this jurisdiction there are three essentials: First, the court must have cognizance of the class of cases to which the one to be adjudicated belongs; second, the proper parties must be presented before the court either in person or by attorney; and third, the point decided upon must be, in substance and effect, within the issue. (See Bouvier's Law Dictionary, p. 57, and authorities there cited.)

Judge Cooley in his great work on Constitutional Limitations, on page 469, announces the proposition which settles the law of this case, if it is sufficiently supported by authority. It is as follows: "If there has been a change or alteration or repeal of the law applicable to the rights of the parties, after the rendition of the original judgment, and pending an appeal, the case must be heard and decided in the appellate court, according to the existing law." That is to say, if the law conferring jurisdiction upon this court is changed after

the action is brought, or after the judgment has been rendered in the court below, or after the case has been filed in this court, or submitted for decision, but before a final judgment has been rendered in the same, then the law existing at the time of the rendition of the final judgment in this court must govern in the decision of the case.

(The proposition above quoted from Cooley's work is supported by the following judicial decisions: *State* v. *Norwood*, 12 Md., 195; *Wright* v. *Graham*, 42 Ark., 140; *Yeaton* v. *United States*, 5 Cranch., 281; *Schooner Rachel* v. *United States*, 6 Cranch., 329; *Commonwealth* v. *Marshall*, 11 Pick., 350; *Commonwealth* v. *Kimball*, 21 Pick., 373; *Hartung* v. *People*, 22 N. Y., 95; *Union Iron Co.* v. *Pierce*, 4 Biss., 327; *Norris* v. *Crocker*, 13 How., 429; *Insurance Co.* v. *Ritchie*, 5 Wall., 541; *United States* v. *Tynen*, 11 Wall., 88; *Engle* v. *Shurts*, 1 Mich., 150; *Sturgis* v. *Spofford*, 45 N. Y., 446; *People* v. *Hobson*, 48 Mich., 27; *McCardie Ex Parte*, 74 U. S. [7 Wallace], 512; *Ewell* v. *Daggs*, 108 U. S., 143 U. S.; *United States* v. *The Peggy* [1 Cr.], 103; *Johnson* v. *Meeker*, 1 Wis., 436; *Musgrove* v. *Vicksburg*, etc., R. R. Co., 50 Miss., 677; *Lewis* v. *Foster*, 1 N. H., 61; *Speckert* v. *Louisville*, 78 Ky., 287; *State* v. *Daley*, 29 Conn., 272; *Atwell* v. *Grant*, 11 Md., 104; *Price* v. *Nesbitt*, 29 Md., 263; *Mayor of Annapolis* v. *State*, 30 Md., 112; *Wade* v. *St. Mary's School*, 43 Md., 178.)

In the case of *Ewell* v. *Daggs*, Mr. Justice Matthews delivered the opinion of the Supreme Court of the United States, and it is reported in 108 U. S., on page 150. It was a case arising in the Circuit Court of the United States for the Western District of Texas, and involved the usury law. Previous to 1869 in Texas the law had forbidden the taking of a greater rate of interest than 12 per cent and made the contract void as to the interest where a greater rate was contracted for than that prescribed by law. By the Constitution of 1869 all usury laws were abolished. Prior to the adoption of the Constitution of 1869 Daggs had brought

suit against Ewell in the Circuit Court of the United States, seeking judgment upon a promissory note and the foreclosure of a mortgage, the note bearing interest at a usurious rate. Ewell had answered setting up the plea of usury, and asking that the interest be deducted in the rendition of the judgment. While this case was pending and before the trial in the circuit court the usury statute was repealed by the Constitution of 1869 recently adopted, and on appeal to the Supreme Court of the United States, that court says:

"The effect of the usury statute of Texas was to enable the party sued to resist a recovery against him of the interest which he had contracted to pay, and it was, in its nature, a penal statute inflicting upon the lender a loss and forfeiture of that extent. Such has been the general, if not uniform, construction placed upon such statutes. And it has been quite as generally decided that the repeal of such laws, without a saving clause, operated retrospectively, so as to cut off the defense for the future, even in actions upon contracts previously made. And such laws operating with that effect, have been upheld, as against all objections on the ground that the deprived parties of vested rights, or impaired the obligation of contracts. The very point was decided in the following cases: *Curtis* v. *Leavitt,* 15 N. Y., 9; *Savings Bank* v. *Allen,* 28 Conn., 97; *Welch* v. *Wadsworth,* 30 Kennedy, 19 Ind., 68; *Town of Danville* v. *Pace,* 25 Grat., 1; *Parmelee* v. *Lawrence,* 48 Ill., 331; *Woodruff* v. *Scruggs,* 27 Ark., 26."

This case is much stronger than the one at bar, inasmuch as it relates to the substantive law, and has regard to a penalty which had already been incurred in favor of the defendant, while the present case has regard only to a question of procedure. Hence, this decision is a strong support for the one under consideration.

It is usual in the enactment of repealing statutes, such as the one under review, to include a saving clause providing that the passage of the act shall not affect any case pending on appeal; but in the absence of such a saving clause the legislature is presumed to intend that such cases shall fall within the purview of the enactment.

The similar principle that the repeal of a penal law pending an appeal and before final action of the appellate court upon the case before it, operates as a legislative pardon, and requires the prosecution to be dismissed, is also well established.   (*United States* v. *Tynen,* 78 U. S. [11 Wall.], 95; *United States* v. *Passmore,* 4 U. S.  [Dall.], 373; *Abbott* v. *Com.,* 8 Watts. [Penn.], 517; 34 Am. Dec., 492; *Com.* v. *Duane,* 1 Binn., 610; 2 Am. Dec. 499; *Keller* v. *State,* 12 Md., 71 Am. Dec., 597 and 598; *Sheppard* v. *State,* 1 Tex. Ct. of App. Rep., 522; 28 Am. Rep., 423.)

One of the most satisfactory cases on this subject, and one which illustrates the case at bar to the best advantage, is found in 74 U. S. Reports.   It is a case of an appeal from a judgment on *habeas corpus,* but it announces the principles on which all cases must rest, whether civil or criminal.   The opinion was delivered by Mr. Chief Justice Chase, and no excuse is necessary for quoting liberally therefrom.   The Chief Justice in the opinion of the court writes the following words:

"The first question necessarily is that of jurisdiction; for, if the act of March, 1868, takes away the jurisdiction defined by the act of February, 1867, it is useless, if not improper, to enter into any discussion of other questions.

"It is quite true, as was argued by the counsel for the petitioner, that the appellate jurisdiction of this court is not derived from acts of Congress.   It is, strictly speaking, conferred by the Constitution.   But it is conferred 'with such exceptions and under such regulations as Congress shall make.'

"It is unnecessary to consider whether, if Congress had made no exceptions and no regulations, this court might not have exercised general appellate jurisdiction under the rules prescribed by itself.   For among the earliest acts of the First Congress, at its first session, was the act of September, 24, 1789, to establish the judicial courts of the United States.   That act provided for the organization of this court and prescribed regulations for the exercise of its jurisdiction.

"We are not at liberty to inquire into the motives of the legislature.   We can only examine into its power under the Constitution;

and the power to make exceptions to the appellate jurisdiction of this court is given by express words.

"What, then, is the effect of the repealing act upon the case before us? We cannot doubt as to this. Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause. And this is not less clear upon authority than upon principle.

"On the other hand, the general rule, supported by the best elementary writers, is, that 'when an act of the legislature is repealed, it must be considered, except as to transactions past and closed, as if it never existed.' And the effect of repealing acts upon suits under acts repealed, has been determined by the adjudications of this court. The subject was fully considered in *Norris* v. *Crocker,* 13 Howard, 429, and more recently in *Insurance Company* v. *Ritchie,* 5 Wallace, 541. In both of these cases it was held that no judgment could be rendered in a suit after the repeal of the act under which it was brought and prosecuted.

"It is quite clear, therefore, that this court cannot proceed to pronounce judgment in this case, for it has no longer jurisdiction of the appeal; and judicial duty is not less fitly performed by declining ungranted jurisdiction than in exercising firmly that which the Constitution and the laws confer." (*McCardle Ex Parte,* 74 U. S. [7 Wallace], p. 512.)

In a very well considered case, in October, 1878, Mr. Chief Justice Waite, in delivering the opinion of the Supreme Court of the United States, while discussing a question almost identical with that involved herein, says:

"It is equally well settled that if a law conferring jurisdiction is repealed without any reservation as to pending cases, all such cases fall with the law. (*United States* v. *Boisdore's Heirs,* 8 How., 113; *McNulty* v. *Batty,* 10 Id., 72; *Norris* v. *Crocker,* 13 Id., 429; *Insurance Company* v. *Ritchie,* 5 Wall., 541; *Ex Parte McArdle,* 7 Id., 514; *The Assessor* v. *Osbornes,* 9 Id., 567.)

"Section 847 of the Revised Statutes, relating to the District of Columbia, is in irreconcilable conflict with the act of 1879. The one gives us jurisdiction when the amount in dispute is $1,000 or more; the other in effect says we shall not have jurisdiction unless the amount exceeds $2,500. It is clear, therefore, that the repealing

clause in the act of 1879 covers this section of the Revised Statutes.

"The act of 1879 is undoubtedly prospective in its operation. It does not vacate or annul what has been done under the old law. It destroys no vested rights. It does not set aside any judgment already rendered by this court under the jurisdiction conferred by the Revised Statutes, when in force. But a party to a suit has no vested right to an appeal or writ of error from one court to another. Such a privilege once granted may be taken away, and, if taken away pending proceedings in the appellate court, stop just where the rescinding act finds them, unless special provision is made to the contrary. The Revised Statutes gave parties the right to remove their causes to this court by writ of error and appeal, and gave us the authority to reexamine, reverse, or affirm judgments or decrees thus brought up. The repeal of that law does not vacate or annul an appeal or a writ already taken or sued but it takes away our right to hear and determine the cause, if the matter in dispute is less than the present jurisdictional amount. The appeal or the writ remains in full force, but we dismiss the suit, because our jurisdiction is gone." (*B. & P. R. R. Co.* v. *Grant,* 98 U. S., 401 and 402.)

(In line with these opinions and supporting them in almost every particular are cited the following well-considered cases decided by the courts of last resort in the several States, to wit: *Todd* v. *Landry,* 5 Mart. [La.], 459; 12 Am. Dec., 479; *Hunt* v. *Jennings,* 5 Blackf. [Ind.], 196; 33 Am. Dec., 465; *North Canal St. Road,* 10 Watt. [Pa.], 351; 36 Am. Dec., 185; *Stephenson* v. *Doe,* 8 Blackf. [Ind.], 508; 46 Am. Dec., 185; *Grant* v. *Grant,* 12 S. Car., 29; 32 Am. Rep., 506; *Lamb* v. *Schottler,* 54 Cal., 319; *Smith* v. *District Ct.,* 4 Colo., 236; *Roush* v. *Morrison,* 47 Ind., 414; *Thayer* v. *Seavey,* 11 Me., 284; *Cummings* v. *Chandler,* 26 Me., 453; *Saco* v. *Gurney,* 34 Me., 14; *Macnawhoc Plantation* v. *Thompson,* 36 Me., 365; *Wade* v. *St. Mary's Industrial School,* 43 Md., 178; *Springfield* v. *Hampden County,* 6 Pick [Mass.], 501; *Con.* v. *Rimball,* 21 Pick. [Mass.], 373; *New London, etc., R. Co.* v. *Boston, etc., R. Co.,* 102 Mass., 386; *Rice* v. *Wright,* 46 Miss., 679; *Mosgrove* v. *Vicksburg, etc., R. Co.,* 50 Miss., 677; *Belvidere* v. *Warren R. Co.,* 34 N. J. L., 195;

*State* v. *Passaic,* 36 N. J. L., 195; *State* v. *Jersey City,* 38 N. J. L., 382; *Angel* v. *Hume,* 17 Hun. [N. Y.], 377; *Butler* v. *Palmer,* 1 Hill [N. Y.], 324; *Hatfield Tp. Road,* 5 Yeates [Pa.], 392; *Stoever* v. *Immell,* 1 Watts. [Pa.], 258; *Fenelon's Petition,* 7 Pa. St., 173; *Hampton* v. *Com.,* 19 Pa. St., 329; *Uwchlan Tp. Road,* 30 Pa. St., 156; *State* v. *Brookover,* 22 W. Va., 214; *Com.* v. *Beatty,* 1 Watts. [Pa.], 382; *Illinois, etc., Canal* v. *Chicago,* 14 Ill., 334; *French* v. *State,* 53 Miss., 615; *Church* v. *Rhodes,* Sup. Ct. Spec. T., 6 How. Pr. [N. Y.], 281; *Matter of North St.,* 1 Pearson [Pa.], 199; *Halcomb* v. *Boyton,* 151 Ill., 295; *U. S.* v. *Six Fermenting Tubs,* 1 Abb. [U. S.], 269.)

The law as deduced from an unbroken current of authority governing us in this case may be summarized as follows: The repeal of a law conferring jurisdiction, whether it be effected expressly or by implication, in the absence of any saving clause or reservation, takes away the right to exercise the jurisdiction, and proceedings pending under it either in the trial court or the court of appeals, must cease with the law repealed.

In addition to the cases heretofore cited reference may be had in support of this proposition to the following: *Gurnee* v. *Patrick County,* 137 U. S., 144; *Sherman* v. *Grinnel,* 123 U. S., 680; *Wilkinson* v. *Nebraska,* 123 U. S., 288; *South Carolina* v. *Gailard,* 101 U. S., 438; *McNulty* v. *Batty et al.,* 51 U. S. [10 How.], 78; *The United States* v. *Boisdore's Heirs,* 49 U. S. [8 How.], 120; *Bank of Hamilton* v. *Dudley,* 27 U. S. [2 Pet.], 522.

In the light of all these decisions we can easily see that no question of vested rights is involved in this matter, nor any question of a retroactive law, nor any other question than the simple one of the existence of jurisdiction in this court to render a judgment in this case at this time.

Like the Supreme Court of the United States, our jurisdiction is derived from the Organic Law, subject to such re-

strictions and modifications as the legislative authority may choose to impose thereupon. When the appeal was first filed in this court this tribunal had jurisdiction to decide it, and when it was presented here in oral argument its jurisdiction still continued, but since it has been under consideration the legislative authority has acted and taken away the jurisdictional power which we had to determine the questions involved.

Such being the case, as presented for our determination, there is nothing left for this court to do, except to dismiss the appeal, and allow the judgment rendered by the district court on the 17th of September last to remain in force. Accordingly this case will be dismissed for want of jurisdiction.

*Dismissed.*

Chief Justice Quiñones and Justices Hernández, Figueras and Wolf concurred.